UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CAROL FIELD and ERIN MANCUSO,                     **REPORT**
                                                                                       **and**
                                                Plaintiffs,        **RECOMMENDATION**

                  v.
                                                                   **07-CV-0241A(F)**

TONAWANDA CITY SCHOOL DISTRICT,

                                                Defendant.

_____

APPEARANCES:          SANDERS & SANDERS
                              Attorneys for Plaintiffs
                              HARVEY P. SANDERS, of Counsel
                              401 Maryvale Drive
                              Cheektowaga, New York 14225

                              WEBSTER SZANYI, LLP
                              Attorneys for Defendant
                              JEREMY A. COLBY,
                              MICHAEL P. McCLAREN, of Counsel
                              1400 Liberty Building
                              Buffalo, New York 14202

                              O'CONNELL & McCLAREN, LLP
                              Attorneys for Defendant
                              SUSAN M. McCLAREN, of Counsel
                              484 Main Street
                              East Aurora, New York 14052


## JURISDICTION

This case was referred to the undersigned by the Honorable Richard J. Arcara

on May 30, 2007 for all pretrial matters.  (Doc. No. 5).  The matter is presently before

the court on Defendant's motion for judgment on the pleadings and for summary

judgment (Doc. No. 19), filed October 1, 2007.

**BACKGROUND**

Plaintiffs Carol Field ("Plaintiff Field" or "Field") and Erin Mancuso ("Plaintiff Mancuso" or "Mancuso") (together, "Plaintiffs") commenced this action on April 12, 2007, alleging that the Tonawanda City School District ("Defendant" or "the District") discriminated against them based on their ages, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*  ("the ADEA") ("First Cause of Action" or "the ADEA claims") and the New York State Human Rights Law, New York Executive Law § 290, *et seq.* ("NYHRL" or "Executive Law") ("Second Cause of Action" or "the NYHRL Claim").  In particular, Plaintiffs assert that, in changing their teaching assignments and performing additional classrooms observations of Plaintiffs in March 2004, actions affecting the terms and conditions of their employment, before Defendant's Early Retirement Incentive offer, previously announced in February 2004, had ended on April 2, 2004, Defendant discriminated against them based on their age, for the purpose of inducing Plaintiffs to accept Defendant's Early Retirement Incentive offer.[1]  Complaint ¶¶ 1, 12, 19, 21.  Attached to the Complaint are Right to Sue Letters dated January 11, 2007 ("the Right to Sue Letters"), Plaintiffs' Exhibit A, and Determination Letters dated September 26, 2006 to Plaintiffs issued by the Equal Employment Opportunity Commission ("EEOC") ("the Determination Letters"), Plaintiffs' Exhibit B, finding reasonable cause that Defendant discriminated against Plaintiffs, as Plaintiffs allege in this action.

---

[1]  Although Plaintiffs alleged, Complaint ¶ 18b, that they were also subjected to individual classroom observations on April 8, 2003 (Mancuso) and April 10, 2003 (Field), only the observations occurring in March 2004 are alleged as constituting discriminatory employment conduct directed toward Plaintiffs by Defendant as one of the grounds for Plaintiffs' ADEA and NYHRL claims.  Complaint ¶ 18a.

Defendant filed its answer on April 23, 2007, and an Amended Answer, with several affirmative defenses, on August 3, 2007 (Doc. No. 12) ("Amended Answer"). On October 1, 2007, Defendant filed its Motion Seeking Dismissal Under Rules 12(c) and 56 (Doc. No. 19) ("Defendant's motion"), the Declaration of Jeremy A. Colby, Esq. ("Colby Declaration") together with a copy of Plaintiffs' discrimination charges filed with the EEOC on June 19, 2004, ("Colby Decl. Exh. A") ("Plaintiffs' EEOC Administrative Charges"), the Declaration of Susan D'Angelo ("D'Angelo Declaration") along with Exhibits A - C ("D'Angelo Decl. Exh(s). ___"), and a Statement of Undisputed Facts ("Defendant's Fact Statement").  On October 2, 2007, Defendant filed a Memorandum in Support of Defendant's Motion Seeking Dismissal under Rules 12(c) and 56. (Doc. No. 20) ("Defendant's Memorandum").

On October 25, 2007, Plaintiffs filed a Memorandum of Law in Opposition to the Defendant's motion (Doc. No. 22) ("Plaintiffs' Memorandum"), along with a Statement of Disputed Material Facts in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 23) ("Plaintiffs' Fact Statement").  Defendant filed its Reply Memorandum of Law in Further Support of Defendant's Motion Seeking Dismissal Under Rules 12(c) and 56 on November 9, 2007 (Doc. No. 24) ("Defendant's Reply Memorandum"), along with the Reply Declaration of Jeremy A. Colby in Support of Defendant's Motion Seeking Dismissal Under Rules 12(c) and 56 (Doc. No. 24-2) ("Colby Reply Declaration"), and a copy of the EEOC's Notice of Charge of Discrimination and Plaintiffs' EEOC Administrative Charges (Doc. No. 24-3) ("Colby Reply Decl. Exh. A").

Defendant, in further support of its motion, submitted, with a letter to the court, dated February 29, 2008, a copy of a New York Court of Appeals decision addressing

3

the applicable statute of limitations for a claim of discrimination under New York law brought against a school district.  (Doc. No. 26) ("Defendant's Letter").  By letter to the court dated March 6, 2008, Plaintiffs responded to Defendant's Letter.  (Doc. No. 27) ("Plaintiffs' Letter").  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion directed to Plaintiffs' First Cause of Action, the ADEA claims and Plaintiffs' Second Cause of Action, the NYHRL Claims, should be GRANTED.  Alternatively, Defendant's motion directed to Plaintiffs' ADEA claims should be GRANTED and Plaintiffs' NYHRL claims should be DISMISSED.

# FACTS[2]

Since April 1968 and September 1969, Plaintiffs Field and Mancuso, respectively, were employed by Defendant as elementary school teachers at Defendant's Fletcher Elementary School ("the Fletcher School").  Complaint ¶ 9; D'Angelo Declaration ¶ 1.  During Defendant's 2003-2004 school year, Field taught second grade and Mancuso taught first grade at Fletcher School as they had throughout their employment with Defendant.  Complaint ¶ 13; D'Angelo Declaration ¶ 3; Defendant's Fact Statement ¶ 6.  Plaintiffs were tenured teachers at the Fletcher School and among the school's most senior teachers; Field was the oldest and second-most senior teacher, and Mancuso was the second-oldest and most senior teacher at the Fletcher School.  Complaint ¶ 10; Colby Declaration ¶ 5 ("For the purposes of these motions only, the District accepts the allegations of the Complaint as true.").

---

[2] Taken from the pleadings and papers filed in the instant action.

"[E]xperienced primary teachers" who were "very successful in their employment" with Defendant, Plaintiffs had, during their teaching careers with Defendant, received "numerous outstanding performance evaluations."  Complaint ¶ ¶ 16-17; Colby Declaration ¶ 5.

Under the collective bargaining agreement between Defendant and Plaintiffs' teachers union, Defendant's tenured teachers were to receive a classroom observation at least every other year.  D'Angelo Declaration ¶ 7; D'Angelo Decl. Exh. B (Defendant's Professional Performance Review Procedure for Tenure and Non-Tenured Teachers ¶ 3).  On April 8, 2003, D'Angelo conducted a classroom observation of Mancuso; on April 10, 2003, D'Angelo conducted a classroom observation of Field. Complaint ¶ 18b; Colby Declaration ¶ 5.

Prior to the start of Defendant's 2003-2004 school year, on August 27, 2003, teachers at the Fletcher School were informed that untenured teachers would be subject to classroom observations during the school year.  Complaint ¶ 18a; Colby Declaration ¶ 5.  On February 20, 2004, Defendant announced it would offer an early retirement incentive to "encourage highly compensated teachers and staff to retire" ("the Early Retirement Incentive").  D'Angelo Declaration ¶ 2; Complaint ¶ 11; Defendant's Fact Statement ¶ 2.  As part of the Early Retirement Incentive, teachers and staff at the Fletcher School were required to notify Defendant, by April 2, 2004, if they intended to accept the Early Retirement Incentive.[3]  Complaint ¶ 11; Defendant's

---

[3]  Nothing in the record specifies when Defendant's employees accepting the Early Retirement Incentive were required to retire in accordance with the Early Retirement Incentive offer; however, based on the respective submissions of the parties, the court presumes such date was the end of the 2003-2004 school year, *i.e.*, at the end of June 2004.

5

Fact Statement ¶ 3.  On March 7, 2004, D'Angelo informed Plaintiffs that they were being assigned to teach fifth grade classes at the Fletcher School beginning with the 2004-2005 school year.[4]  D'Angelo Declaration ¶ 3; Defendant's Fact Statement ¶ 6. On March 9, 2004, D'Angelo announced that classroom observations for tenured teachers would be conducted, which, given that classroom observations of tenured teachers at the Fletcher School, including Plaintiffs, had been conducted during April 2003, was inconsistent with Defendant's past custom and practice at the Fletcher School.  Complaint ¶¶ 18a, 18b; Colby Declaration ¶ 5.  At the time of Defendant's notice to Plaintiffs regarding their new fifth-grade teaching assignments, Field was fifty-seven and Mancuso was fifty-six.  Complaint ¶ ¶ 6-7.  Thereafter, on March 15, 2004, D'Angelo conducted a classroom observation of Field and, on March 23, 2004, of Mancuso.  D'Angelo Declaration ¶ 7; Defendant's Fact Statement ¶ 4.  Plaintiffs were the only tenured teachers at the Fletcher School who were subjected to D'Angelo's classroom observations in 2004.  Complaint ¶ 18a; Colby Declaration ¶ 5.

Plaintiffs did not elect to accept Defendant's Early Retirement Incentive offer by the April 2, 2004 deadline; instead, on June 21, 2004, Plaintiffs filed charges of age discrimination under the ADEA against Defendant with the EEOC.  Complaint ¶ 8; Defendant's Fact Statement ¶ 11; Colby Decl. Exh. A.  Plaintiffs' assignments to teach fifth grade for the 2004-2005 school year did not result in Plaintiffs being "assigned to a different building, specialty class, or to any course or grade outside the parameters of their [Plaintiffs'] teaching certifications."  D'Angelo Declaration ¶ 5 (bracketed material

_____

[4] According to Plaintiffs' EEOC Administrative Charges, Plaintiffs were notified of their fifth grade teaching assignments on March 5, 2004.  Colby Decl. Exh. A.  The discrepancy is not material to the analysis of the issues presented in Defendant's motion.

added).  In Plaintiffs' EEOC Administrative Charges, Plaintiffs claimed Defendant

discriminated against Plaintiffs because of their ages through Defendant's additional

classroom observations and teaching reassignments in an "attempt to force [Plaintiffs]

to take the [Defendant's] early retirement incentive"[5] that had been offered by

Defendant in February 2004.  Colby Decl. Exh. A (bracketed material added).  Plaintiffs

also charged Defendant had "harassed, intimidated and subjected [Plaintiffs] . . .  to

different terms and conditions of employment" including "increased formal [classroom]

observations and administrative visits," the fifth grade teaching assignments, and

discriminatory actions based on Plaintiffs' ages "in an attempt to force Plaintiffs to elect

Defendant's early retirement incentive and in an attempt to force [Plaintiffs] . . . to

retire."  Colby Decl. Exh. A.  In Plaintiffs' EEOC Administrative Charges, Plaintiffs

indicated March 5, 2004 as the date Plaintiffs were notified of their new teaching

assignments for the 2004-2005 school year, and as the date on which Defendant's

discriminatory action occurred.  *Id.*  Plaintiffs did not charge Defendant with

discriminatory conduct of a continuing nature by checking the designated box for doing

so on the EEOC's Notice of Charge of Discrimination form.  Defendant's Reply

Memorandum at 5 (referencing Colby Decl. Exh. A).  No other administrative charges of

employment discrimination were filed with the EEOC against Defendant by Plaintiffs.

*Id.*  In the EEOC's Notices of Charge of Discrimination to Defendant, the EEOC invited

Defendant to respond to the Plaintiffs' EEOC Administrative Charges by July 16, 2004,

to consider engaging in EEOC-sponsored mediation, and enclosed copies of Plaintiffs'

---

[5]  The text of Plaintiffs' EEOC Administrative Charges is identical.  Colby Decl. Exh. A (*passim*).

EEOC Administrative Charges.  Colby Reply Decl. Exh. A.  Copies of the administrative charges were forwarded to the Superintendent of the District, Mr. George Batterson, by the EEOC's regional office on June 30, 2004.[6]  Colby Reply Decl. Exh. A.  The copies of Plaintiffs' EEOC Administrative Charges were received by Defendant on July 2, 2004.  Colby Reply Declaration ¶ 2.

While Plaintiffs' EEOC Administrative Charges were pending before the EEOC, by letters dated February 24, 2006, Plaintiffs notified Defendant they intended to retire effective June 30, 2006 and their retirements became effective July 1, 2006.  D'Angelo Declaration ¶ 8; D'Angelo Decl. Exh. C.  In its Determination Letters to Plaintiffs and Defendant, dated September 26, 2006, the EEOC concluded there was "reason to believe" Defendant had violated Plaintiffs' rights under the ADEA and suggested conciliation.  Plaintiffs' Exh. B.  In its determination, the EEOC found reasonable cause to believe that Plaintiffs rights had been violated by Defendant because, according to the EEOC, Plaintiffs had been subjected to consecutive annual classroom evaluations in April 2003 and again in March 2004, prior to the deadline established for acceptance of Defendant's Early Retirement Incentive offer.  Plaintiffs' Exh. B at 1.[7]  Specifically, the EEOC determined that Defendant's purpose in offering Plaintiffs, and other older teachers in Defendant's system, the Early Retirement Incentive was to reduce the number of more senior and highly paid teachers, such as Plaintiffs, on its payroll.  *Id.* The EEOC also found that Defendant's Early Retirement Incentive offer, the sequential

---

[6]  The record does not indicate the manner of delivery of the Plaintiffs' Administrative Charges, but, presumably, the documents were mailed to Defendant.

[7]  Although the EEOC stated such deadline was March 26, 2004, Plaintiffs' Exh. B at 1, the parties indicate the deadline was April 2, 2004. Complaint ¶ 11; Colby Declaration ¶ 5.

annual classroom observations of Plaintiffs, that the EEOC determined to be inconsistent with Defendant's past custom and practice, Plaintiffs' Exh. B at 1, as well as Plaintiffs' teaching reassignments, were not coincidental actions, but, in the opinion of the EEOC, were intended to obtain Plaintiffs' early retirement under the Early Retirement Incentive.  *Id.* at 2.  In its Determination Letters, the EEOC again suggested the parties engage in conciliation activity with the EEOC.  *Id.*  The Determination Letters made no reference to any discriminatory conduct directed to Plaintiffs after March 2004 by Defendant, and while the letters state that Plaintiffs declined to accept Defendant's Early Retirement Incentive offer, Plaintiffs' Exh. B at 1, they do not indicate that Plaintiffs instead elected, on February 24, 2006, to retire at the end of June 2006. Plaintiffs' Exh. B (*passim*).  On January 11, 2007, the EEOC terminated its administrative proceedings against Defendant, and issued Right to Sue Letters to Plaintiffs.  Plaintiffs' Exh. A.  On July 19, 2007, during a pre-trial scheduling conference before the court pursuant to Fed.R.Civ.P. 16(b), Plaintiffs' attorney stated that Plaintiffs' 2006 retirements constituted actionable constructive discharges.  (Doc. No. 9) (Minute Entry).

In their opposition to Defendant's motion, Plaintiffs assert that on January 11, 2007, Plaintiffs sent a letter to the EEOC investigator, John Thompson ("Thompson"), who investigated Plaintiffs' EEOC Administrative Charges, in response to Thompson's request for additional information regarding Plaintiffs' financial losses, stating that they had retired "at the end of the 2005-2006 school year due to the harassment related to this charge."  Plaintiffs' Memorandum at 5.  Copies of this correspondence between Thompson and Plaintiffs are not included in the record.  No affidavits or other evidence

were filed by Plaintiffs in opposition to Defendant's motion, nor have Plaintiffs requested

leave to conduct discovery, pursuant to Fed.R.Civ.P. 56(f), in order to oppose

Defendant's motion.


## DISCUSSION

**I.    Plaintiffs' ADEA Claims.[8]**

Defendant seeks summary judgment on Plaintiffs' ADEA claims, arguing

Plaintiffs failed to allege or demonstrate a material issue of fact that, as a result of any

age-related employment discrimination against Plaintiffs by Defendant, Plaintiffs were

subject to an adverse employment action, a required element of Plaintiffs' ADEA cause

of action.  Colby Declaration ¶ 3; Defendant's Memorandum at 9-12; Defendant's Reply

Memorandum at 8.  Specifically, Defendant argues that even if it is true that Defendant

discriminated against Plaintiffs based on their ages, Colby Declaration ¶ 5, as the

EEOC determined, Plaintiffs' Exh. B at 2, Plaintiffs do not allege they suffered an

adverse employment action, actionable under the ADEA, as a result of Defendant's

actions.  Defendant's Memorandum at 9.  Plaintiffs concede that "as discrete incidents,

the [teaching] reassignments and increased [classroom] observations [of Plaintiffs] do

not individually amount to an adverse employment action."  Plaintiffs' Memorandum at 8

(bracketed material added).  Nevertheless, Plaintiffs contend that "the harassment and

---

[8]  Although at the outset of Defendant's motion, Defendant moves pursuant to Fed.R.Civ.P. 12(c) ("Rule 12(c)") against Plaintiffs' NYHRL claims, Colby Affirmation ¶ 3; Defendant's Memorandum at 4, because the court finds that granting summary judgment to Defendant, as Defendant also requests, on Plaintiffs' ADEA claims may deprive this court of subject matter jurisdiction over Plaintiffs' NYHRL claims pursuant to 28 U.S.C. § 1367(c)(3), a point not raised by the parties, the court first addresses Defendant's motion seeking summary judgment directed to Plaintiffs' ADEA claims.

malice associated with such actions created a hostile work environment, which eventually resulted in a constructive discharge [when Plaintiffs retired in 2006], sufficient to establish a prima facie ADEA claim." *Id.* (bracketed material added). Although Plaintiffs alleged that Defendant subjected Plaintiffs to "harassment, intimidation and different terms and conditions of employment . . .," based on Plaintiffs' ages, Complaint ¶ 1, Plaintiffs did not raise a specific claim of constructive discharge in the Complaint.

However, on July 19, 2007 at a pretrial conference conducted pursuant to Fed.R.Civ.P. 16(b) ("the Rule 16(b) Conference") before the undersigned, Plaintiffs' attorney stated that Defendant's discriminatory actions had forced Plaintiffs into retirement in 2006.  (Doc. No. 9) (Minute Entry).  Consistent with this oral representation, Plaintiffs now contend, in opposition to Defendant's motion, that they were constructively discharged as a result of a hostile work environment, commencing in March 2004, created by Defendant.  Plaintiffs' Memorandum at 4.  Plaintiffs further maintain that Plaintiffs' subsequent retirements in 2006 constituted constructive discharges that were reasonably related to Plaintiffs' EEOC Administrative Charges, which included Plaintiffs' allegations of Defendant's harassment and intimidation as of the time the charges were filed, Colby Reply Decl. Exh. A, and therefore were reasonably within the scope of EEOC's investigation.  Plaintiffs' Memorandum at 4.  As such, Plaintiffs contend, in opposition to Defendant's motion, Defendant's Memorandum at 5-9, such hostile work environment and constructive discharge claims were administratively exhausted and are therefore actionable under Plaintiffs' ADEA claims.  Plaintiffs' Memorandum at 5-8.

Defendant opposes consideration of Plaintiffs' hostile work environment and constructive discharge claims under the ADEA, arguing that not only does Defendant's discriminatory conduct, even assuming it occurred as Plaintiffs allege, fail, as a matter of law, to establish a hostile work environment or the predicate for an actionable constructive discharge claim, but, additionally, Plaintiffs did not allege a hostile work environment created by Defendant or constructive discharge claim after June 2004 either in Plaintiffs' EEOC Administrative Charges or, almost three years later, in the Complaint. Defendant's Reply Memorandum at 9. In particular, Defendant contends that because in Plaintiffs' EEOC Administrative Charges Plaintiffs specified March 5, 2004, the classroom observation of Field conducted by Defendant, as the date Defendant's discriminatory conduct took place rather than checking the "continuing violation" or "other" type of violation box on the EEOC Notice of Charge of Discrimination Form, Colby Decl. Exh. A, there was no charge before the EEOC of a continuing course of discriminatory conduct after March 2004 by Defendant constituting a hostile work environment resulting in Plaintiffs' constructive discharge in 2006 that could have been considered by the EEOC as an administrative prerequisite to this action. Defendant's Reply Memorandum at 9. Defendant therefore contends Plaintiffs' later assertions, at the Rule 16(b) Conference and, presently, in opposition to Defendant's motion, Plaintiffs' Memorandum at 4, that Plaintiffs' retirements in June 2006 resulted from Defendant's discriminatory conduct in 2004, notwithstanding the lapse of approximately 29 months following Defendant's discriminatory conduct directed to Plaintiffs on March 5, 2004, are not reasonably related to Plaintiffs' EEOC Administrative Charges. Defendant's Memorandum at 5-9. Thus, according to

Defendant, Plaintiffs have failed to exhaust their required administrative remedies before the EEOC on Plaintiffs' belated allegations of a hostile work environment and constructive discharge as adverse employment actions and, as such, these claims, even if considered to have been pleaded in the Complaint, are time-barred. Defendant's Reply Memorandum at 4-8; 8-10.

Summary judgment will be granted when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir. 1991). The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir. 1999) (citing *Anderson,* 477 U.S. at 255); *Rattner,* 930 F.2d at 209. The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex,* 477 U.S. at 322; *see Anderson,* 477 U.S. at 247-48.

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue of fact to be tried. *Rattner,* 930 F.2d at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Rattner,* 930 F.2d at 209. If the moving party meets its

13

burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party may not rest upon unsubstantiated allegations, conclusory assertions or mere denials, but must set forth and establish specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue requiring trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584 (1986). Once a party moving for summary judgment has made a properly supported showing regarding the absence of any genuine issue as to all material facts, the nonmoving party, with the burden of proof at trial, must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir. 1995) (citing cases).

The ADEA makes it unlawful "for an employer . . . to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623 (a)(1); *Bond v. City of Middletown,* 389 F.Supp.2d 319, 343 (D.Conn. 2005). ADEA violations may be asserted by employees who are at least forty years old. *Bond*, 389 F.Supp.2d at 343 (citing 29 U.S.C. § 631(a)). ADEA claims are analyzed "under the same burden-shifting framework as claims brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.), *cert. denied*, 534 U.S. 993 (2001). First, a plaintiff

must present sufficient evidence to support a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).  Once plaintiff has presented *prima facie* evidence, the defendant must "articulate some legitimate, nondiscriminatory reason" for its decision.  *Id.*  If defendant meets this burden, the plaintiff must prove, by a preponderance of the evidence, that the reason articulated was a pretext for discrimination.  *Id.* at 802-04.  To establish a *prima facie* case of age discrimination, Plaintiffs must show (1) they belong to a protected class; (2) they were qualified for their positions; (3) they were subjected to adverse employment action; and (4) circumstances which "give rise to an inference of discrimination." *Abdu-Brisson*, 239 F.3d at 466-67 (citing *McDonnell Douglas,* 411 U.S. at 802). Plaintiffs' burden establishing a *prima facie* case of age discrimination under the ADEA is *de minimis.  Id.* at 467.

In this case, that Plaintiffs are members in the protected class, *i.e.*, over forty years old at the time of the alleged discrimination, and qualified for their respective teaching positions with Defendant, is not disputed.  Nor does Defendant directly contradict the EEOC's finding that Defendant subjected Plaintiffs to discriminatory treatment by ordering Plaintiffs' reassignments to teach fifth grade beginning with Defendant's 2004-2005 school year, Plaintiffs' Exh. B,  and, as Plaintiffs allege in the Complaint, Complaint ¶ ¶ 1, 12, by conducting consecutive annual observations in April 2003 and again in March 2004  of Plaintiffs' classroom teaching performance based on Plaintiffs' ages and seniority.  Colby Declaration ¶ 5 ("For the purpose of these motions only, the District accepts the allegations of the Complaint as true.") (underlining added). However, Defendant maintains that Plaintiffs' ADEA claims are, notwithstanding this

concession, subject to summary judgment because Plaintiffs did not allege, either in

Plaintiffs' EEOC Administrative Charges or the Complaint, that Plaintiffs were subjected

to an adverse employment action, as required by the ADEA, *Abdu-Brisson*, 239 F.3d at

466-67, resulting from such discrimination, and present no evidence, in opposition to

Defendant's motion, establishing a material issue of fact that Plaintiffs were subjected

to an adverse employment action by Defendant, actionable under the ADEA, resulting

from any acts of discrimination based on Plaintiffs' ages, including Defendant's

unsuccessful attempt to effect Plaintiffs' early retirement by acceptance of the Early

Retirement Incentive, or any other discriminatory conduct related to Plaintiffs' ages after

March 2004.  Defendant's Memorandum at 9.  As noted, Facts, *supra*, at 9, in

opposition to Defendant's motion, other than relying on the EEOC's Determination

Letters, Plaintiffs' Exh. B., Plaintiffs submitted no affidavits or other admissible evidence

raising material issues of fact related to any element of Plaintiffs' ADEA claims,

particularly that Plaintiffs were subjected to an adverse employment action as a result

of age discrimination, as required by Fed.R.Civ.P. 56(c), (e)(2).  *See Goenaga*, 51 F.3d

at 18 (non-moving party with burden of proof at trial must establish existence of material

issue of fact requiring trial to avoid summary judgment).  Although in the Determination

Letters the EEOC found grounds to believe Defendant discriminated against Plaintiffs

based on their ages as alleged in the Complaint, Complaint ¶ ¶ 1, 12; Plaintiffs' Exh. B

at 2; Colby Declaration ¶ 5, on account of the teaching reassignments and additional

classroom observations of Plaintiffs, Plaintiffs' reliance on the EEOC's findings to defeat

Defendant's motion, Plaintiffs' Memorandum at 9, is unavailing.

     Findings of discrimination by the EEOC are not admissible evidence, *per se*,

sufficient to avoid summary judgment.  *Wanamaker v. Columbian Rope Company*, 907

F.Supp. 522, 538 n. 24 (N.D.N.Y. 1995) (admissibility of EEOC reasonable cause

determination discretionary with district court dependent upon probative factual and a

proper legal basis for administrative finding and quoting *EEOC v. Regency Architectural

Metals Corp.*, 896 F.Supp. 260, 263 (D.Conn. 1995), *aff'd*, 108 F.3d 462 (2d Cir.

1997)); *see also Miller v. Saint-Gobain Advanced Ceramics Corp.*, 2004 WL 941798 *3

n. 8 (W.D.N.Y. Apr. 9, 2004) ("[d]istrict courts have substantial discretion with respect to

the weight to be accorded an EEOC determination.") (citing *Wanamaker,* 907 F.Supp.

at 538 n. 24 and *Regency Architectural Metals Corp*., 896 F.Supp. at 263).  In this case,

the court finds the EEOC Determination Letters are inadmissible as insufficiently

probative and without legal basis to avoid summary judgment.

Specifically, as the Determination Letters do not make any findings that

Defendant created a hostile work environment or caused Plaintiffs to be constructively

discharged based on Plaintiffs' ages, Plaintiffs' Exh. B (*passim*), they provide no

evidence of an adverse employment action, as required for a viable claim of

employment discrimination, under the ADEA sufficient to avoid summary judgment.

Further, as discussed, Discussion, *infra*, at 20-25, the two grounds upon which the

EEOC's determinations of age related discrimination were based – Plaintiffs' teaching

reassignments and increased classroom observations – are insufficient as a matter of

law to constitute the required element under the ADEA that such discrimination resulted

in material and adverse employment actions, and Plaintiffs concede as much.  Plaintiffs'

Memorandum at 8.  Thus, the EEOC's determinations, addressing the merits of

Plaintiffs' ADEA claims, are at odds with prevailing caselaw, and inadmissible on that

basis.  *See Wanamaker,* 907 F.Supp.2d at 538 n. 24 (lack of legal basis for EEOC

finding of retaliation against plaintiff renders EEOC determination inadmissible).

Here, it is undisputed that the sole basis for Plaintiffs' ADEA claims is that

Defendant, in an attempt to force Plaintiffs to accept early retirement in 2004,

reassigned Plaintiffs to teach fifth grade at the beginning of the next school year, and

then subjected each of them to an additional classroom observation – contrary to

Defendant's past policy and practice – which took place in March 2004, approximately

one year after the classroom observations of Plaintiffs which Defendant conducted in

April 2003 pursuant to the CBA.  Plaintiffs do not contest that such changes in teaching

assignments and additional administrative scrutiny of their work, without more, fail as a

matter of law to establish an adverse employment action sufficient to support an ADEA

claim.  Plaintiffs' Memorandum at 8.  Nor do Plaintiffs disagree that the additional

classroom observations were permitted under the CBA, and that neither Plaintiffs nor

their union ever attempted to file either a grievance or an arbitration request based on

the consecutive April 2003 and March 2004 classroom observations, D'Angelo

Declaration ¶ 7, to which Plaintiffs point, Complaint ¶ ¶ 1, 12, and the EEOC found,

Plaintiffs' Exh. B, as evidence of Defendant's age-related discriminatory conduct toward

them.  Moreover, Plaintiffs do not dispute D'Angelo's statement, D'Angelo Declaration

¶¶ 5-6, that Plaintiffs' teaching reassignments did not result in any degradation of

Plaintiffs' working conditions based on the location of Plaintiffs' classrooms, or any

professional duties outside Plaintiffs' teaching certifications, including fifth grade at the

Fletcher School, or diminishment of Plaintiffs' "salaries, benefits, prestige or

opportunities for advancement."  *Id.*

As such, Defendant maintains Plaintiffs fail to raise any material issue of fact that Plaintiffs' teaching reassignments or the extra classroom observations amounted to a "material adverse change" in Plaintiffs' working conditions or potential for career advancement.  Defendant's Memorandum at 11-12.  In opposing Defendant's request for summary judgment, Plaintiffs rely on their allegation that they suffered "damages to their reputation," Complaint ¶ 22, Plaintiffs' Fact Statement denying Defendant's assertion that the reassignments "did not affect their salaries, benefits, prestige or opportunities for advancement," Plaintiffs' Fact Statement ¶ 10, and the EEOC's Right to Sue and Determination Letters to Plaintiffs, Plaintiffs' Exhs. A and B.[9] Notwithstanding these allegations, Plaintiffs have failed to submit any evidence, by affidavit or otherwise, to counter Defendant's factual representations and averments supporting Defendant's motion.

It is fundamental that to avoid summary judgment a plaintiff having the burden of proof, as do Plaintiffs in this case, must point to admissible evidence demonstrating a material issue of fact relevant to the elements of their claims and may not rely on their pleadings or mere denials of a defendant's statement of undisputed facts.  Fed.R.Civ.P. 56(e)(2) (opposing party may not rely on "allegations or denials in its own pleadings"); *Goenaga,* 51 F.3d at 18; *Covelli v. Nat'l Fuel Gas Distribution Corp*. 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001) (citing *Holtz v. Rockefeller & Co.* 258 F.2d 62, 74 (2d Cir. 2001) (mere denials of moving party's statement of undisputed facts insufficient to

---

[9]  A right-to-sue letter from the EEOC is not a prerequisite to suit provided a plaintiff's administrative charges have been pending before the EEOC for at least sixty days.  *See McPherson v. New York City Dep't of Educ*., 457 F.3d 211, 215 (2d Cir. 2006) (citing *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562-63 (2d Cir. 2006)).  However, where the right-to-sue letter is issued, a plaintiff is required to file suit within ninety-days after receipt.  *Holowecki*, 440 F.3d at 563.

establish material issues of fact)), *aff'd*, 49 Fed.Appx. 356 (2d Cir. 2002) (table).

Additionally, as discussed, Discussion, *supra*, at 16-17, the EEOC Determination

Letters, relied on by Plaintiffs, which found Defendant had engaged in age-related

discriminatory employment conduct against Plaintiffs based on Plaintiffs' ages, are

inadmissible and thus insufficient to avoid summary judgment against Plaintiffs on

Plaintiffs' ADEA claims.

Generally, to establish an adverse employment action under the ADEA, a

plaintiff must establish that a defendant's discriminatory actions resulted in "'materially

adverse changes in the terms and conditions of employment . . ..'" *Chandler v. AMR*

*American Eagle Airlines*, 251 F.Supp.2d 1173, 1184 (E.D.N.Y. 2003) (*quoting*

*Henriquez v. Times Herald* Record, 1997 WL 732444, at *5 (S.D.N.Y. Nov. 25, 1997),

*aff'd*, 165 F.3d 14 (2d Cir. 1998)).  As relevant to the instant case, courts have held that

increased employer scrutiny is not sufficient to establish an adverse employment action.

*See Alfieri v. SYSCO Food Services – Syracuse*, 192 F.Supp.2d 14, 23 (W.D.N.Y.

2001) ("hypercritical supervisor" and "unfair and unwarranted treatment" not actionable)

(quoting *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993)).  Thus, despite

the fact that Plaintiffs had been subjected to similar classroom observations during April

2003, arguably contravening Defendant's past policy and practice as the EEOC

Determination Letters found, Plaintiffs' Exh. B at 1, Defendant's classroom observations

of Plaintiffs which occurred on March 15 and 24, 2004, after Plaintiffs were informed, on

either March 5 or 7, 2004, of their new fifth grade teaching assignments, do not

demonstrate Plaintiffs were subjected to an adverse employment action actionable

under the ADEA.  Although, under the ADEA a forced early retirement may constitute a

form of adverse employment action, *Less v. Nestle Co.*, 750 F.Supp. 110, 114

(W.D.N.Y. 1988) (recognizing that allegation of coerced early retirement may support a

constructive discharge claim under ADEA), it is undisputed that Plaintiffs declined

Defendant's Early Retirement Incentive.  Plaintiffs' Memorandum at 6 (Plaintiffs "elected

not to retire [in 2004]"), *id.* at 9 ("[Plaintiffs] involuntarily retired in June of 2006.")

(bracketed material added).  Plaintiffs' Exh. B at 1 ("Charging party elected not to

retire.")  Despite this contention, Plaintiffs do not aver by affidavit, in opposition to

Defendant's motion, that but for Defendant's discriminatory actions in 2004, they would

have continued to teach at any grade level at the Fletcher School beyond their 2006

retirements, particularly the first and second grades.

      Nor is a reassignment of a plaintiff's teaching duties sufficient to establish an

adverse employment action for ADEA purposes.  *See Galabya v. New York City Bd. of

Educ.*, 202 F.3d 636, 641 (2d Cir. 2000) (no adverse employment action under ADEA

where plaintiff's teaching assignment not shown to be less prestigious, less suited to

appellant's skills and expertise, nor inhibiting plaintiff's career advancement); *Chandler,*

251 F.Supp.2d at 1183 ("[a] job reassignment, without attendant material adverse

consequences, is not an adverse employment action."); *Ticali v. Roman Catholic

Diocese of Brooklyn*, 42 F.Supp.2d 249, 265 (E.D.N.Y.) (despite plaintiff's "disdain" to

teaching prekindergarten, summary judgment granted to employer based on plaintiff's

failure to present "material evidence that her transfer [to prekindergarten from teaching

first grade] obliged her to perform tasks that were less appropriate for her skills than her

prior position or adverse to her in any other legally cognizable way." (bracketed material

added)), *aff'd,* 201 F.3d 432 (2d Cir. 1999).  "'[I]f a transfer is truly lateral and involves

no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not itself render the denial or receipt of the transfer [an] adverse employment action.'" *Carmellino v. Dist. 20 of New York City Dep't. of Educ.*, 2006 WL 2583019, at *39 (S.D.N.Y. Sep't. 6, 2006) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)). Importantly, Plaintiffs fail to provide any evidence, in opposition to Defendant's motion, to explain why teaching fifth grade during the 2004-2005 school year, and for the 2005-2006 school year, at the Fletcher School could be reasonably considered to be a more difficult professional task for Plaintiffs to perform than teaching first and second grades in the 2003-2004 school year, or in prior years at the Fletcher School.[10]  *See Carmellino,* 2006  WL 2583019, at * 29 (S.D.N.Y. Sep't. 6, 2006) (citing *Ticali,* 41 F.Supp.2d at 265).  *See also Patrolmen's Benevolent Ass'n v. City of New York*, 74 F.Supp.2d 321, 335 (S.D.N.Y. 1999) ("The key inquiry regarding involuntary transfers is whether the transfer constitutes a negative employment action tantamount to a demotion.").  Other than the consecutive annual classroom observations which concededly took place in April 2003 and March 2004, Plaintiffs submit no evidence of any other alleged forms of harassment including other such observations or heightened administrative scrutiny occurring after March 2004 by Defendant related to Plaintiffs' teaching activities.

Although Plaintiffs allege their teaching reassignments constituted a potential CBA violation, as "an unsound administrative decision," Complaint ¶¶ 15-16, and that

---

[10]  This question was not considered by the EEOC in its Determination Letters.

Plaintiffs "suffered damages to their reputations," as a result of the reassignments, Complaint ¶ 22, Plaintiffs point to no evidence to support such assertions.[11]   Nor do Plaintiffs provide any evidence that Plaintiffs suffered economic losses, whether in salary or fringe benefits, as a result of the reassignments or the consecutive classroom observations in March 2004.   Facts, *supra*, at 9, and Plaintiffs' denials, Plaintiffs' Fact Statement ¶ 10, of Defendant's Fact Statement asserting Plaintiffs did not suffer such losses, Defendant's Fact Statement ¶ 10, are insufficient to avoid summary judgment. *See Covelli*, 2001 WL 1823584 at *1 (denials of moving party's undisputed fact statement insufficient to avoid summary judgment).   Allegations in a complaint are, of course, no bar to summary judgment,  Fed.R.Civ.P. 56(e)(2), and Plaintiffs make no effort to contradict D'Angelo's averments, D'Angelo Declaration ¶ 5, that Plaintiffs were not required to change buildings or teach outside the scope of their teaching certifications in connection with the reassignments.   The record is therefore devoid of anything to support a reasonable inference that Plaintiffs' teaching reassignments, or additional classroom observations, were tantamount to a demotion or constituted a significant and material adverse change in Plaintiffs' working conditions.   *See Chandler*, 251 F.Supp.2d at 1184 (summary judgment granted where plaintiff failed to demonstrate defendant's reassignment of plaintiff had "affected his pay, hours, or position within the organization."). Thus, Plaintiffs have failed to show there exists any evidence requiring trial that as a result of the only alleged discriminatory conduct

---

[11]  Although Defendant conceded Plaintiffs' allegations "[f]or purposes of" Defendant's motion, Colby Declaration ¶ 5, as noted, Discussion, *supra*, at 16 n. 8, Plaintiffs do not rely on this concession in opposing Defendant's motion.

directed to Plaintiffs by Defendant on this record – the March 2004 classroom

observations and change in teaching assignments – Plaintiffs suffered any adverse

employment action, including a change of working conditions, loss of professional

status, or any diminution of compensation or benefits sufficient to sustain Plaintiffs'

ADEA claims.  *See Goenaga*, 51 F.3d at 18 (where moving party carries its burden of

showing there exists no material issue of fact on an element of plaintiff's claim,

plaintiff's failure to come forward with evidence sufficient to support a jury verdict in its

favor, where plaintiff has burden of proof, requires summary judgment in favor of the

moving party).  Plaintiffs do not dispute they carry the burden of proof at trial on the

issues relevant to Defendant's motion.

       Although Plaintiffs concede that their teaching reassignments and increased

observations do not amount to an adverse employment action, Plaintiffs' Memorandum

at 8, Plaintiffs nonetheless argue, in opposition to Defendant's motion, that the

"harassment and malice associated with these actions created a hostile work

environment" and resulted in Plaintiffs' constructive discharge when Plaintiffs decided to

retire, "involuntarily," in 2006 thereby constituting adverse employment actions.

Plaintiffs' Memorandum at 8-9.  There are several difficulties with Plaintiffs' contentions.

       First, a fair reading of the Complaint fails to reveal any discernible allegation that

Plaintiffs' claimed Defendant's discriminatory conduct created a hostile work

environment while Plaintiffs were employment at the Fletcher School or resulted in a

constructive discharge at any time.  "[T]o prevail on a hostile work environment claim

under Title VII and the ADEA, a plaintiff must show that the harassment was sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003)

(internal quotations omitted).  In particular, Plaintiffs must show "either that a single

incident was extraordinarily severe, or that a series of incidents were sufficiently

continuous and concerted to have altered the conditions of [Plaintiffs'] working

environment." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000) (internal

quotation omitted).  A constructive discharge claim based on a hostile work

environment requires a showing that the altered work conditions become "so difficult or

unpleasant that a reasonable person in the employee's shoes would have felt

compelled to resign[,]" or retire.  *Less*, 705 F.Supp. at 114 (ADEA claims based on

alleged forced early retirement ) (quoting *Rosado v. Santiago*, 562 F.2d 114, 119 (1st

Cir. 1977) and quoted in *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983)).

In determining the hostility of the work environment, the totality of the

circumstances is considered, including "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work

performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "As a general rule,

discriminatory incidents must be more than 'episodic; they must be sufficiently

continuous and concerted in order to be deemed pervasive.'" *Terry*, 336 F.3d at 148

(citing *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan

Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997))); *see also Murphy v. Bd. of Educ. of

Rochester City Sch. Dist.*, 273 F.Supp.2d 292, 304 (W.D.N.Y. 2003) (court rejected

plaintiff-teacher's hostile work environment claim against defendant-school district and

found that, despite having lost numerous committee posts and becoming subjectively

"devastated" by his transfer, plaintiff had not shown that his transfer "created a

'materially significant disadvantage.'") (quoting *Galabya,* 202 F.3d at 641)) , *aff'd*, 106

Fed.Appx. 746 (2d Cir. 2004).

While Plaintiffs' EEOC Administrative Charges and the Complaint allege

Defendant subjected Plaintiffs to harassment and intimidation, Colby Reply Decl. Exh.

A; Complaint ¶ ¶ 1, 12, other than the additional classroom observations and teaching

reassignments in March 2004, no discriminatory conduct, motivated by Plaintiffs' ages,

directed to Plaintiffs by Defendant is mentioned in Plaintiffs' EEOC Administrative

Charges nor are any such facts alleged in the Complaint.  Significantly, in its

Determination Letters, the EEOC failed to allude to any other acts of discrimination

directed to Plaintiffs by Defendant after the March 2004 incidents.  Plaintiffs' Exh. B

(*passim*).  While Plaintiffs now insist that Defendant's "harassment and malice

associated with [the teaching] reassignments and increased observations, . . . created a

hostile work environment, which resulted in a constructive discharge," Plaintiffs'

Memorandum at 8 (bracketed material added), this assertion is plainly absent from both

the Plaintiffs' EEOC Administrative Charges and their Complaint.

Thus, even if Plaintiffs' EEOC Administrative Charges and the Complaint are

liberally read to allege a claim that Defendant subjected Plaintiffs to a hostile work

environment, Plaintiffs' failure to point to any evidence of such a hostile work

environment, apart from the additional classroom observations and teaching

reassignments which occurred in March 2004, and Plaintiffs' failure to allege any

subsequent constructive discharge, specifically in 2006 as Plaintiffs now maintain,

either in Plaintiffs' EEOC Administrative Charges or the Complaint, resulting from a

hostile work environment, is fatal to Plaintiffs' present assertions of such adverse
employment actions in opposition to Defendant's motion directed to Plaintiffs' ADEA
claims.  *See Beckman v. United States Postal Serv.*, 79 F.Supp.2d 394, 407-08
(S.D.N.Y. 2008) (unpleaded claims raised for first time in memorandum in opposition
insufficient to avoid summary judgment) (citing *Yerdon v. Henry*, 91 F.3d 370, 379 (2d
Cir. 1996)); *Duquin v. Dean*, 423 F.Supp.2d 411, 413-14 (S.D.N.Y. 2006) (absent facts
alleged in complaint to support claim raised for first time in plaintiff's memorandum of
law in opposition to summary judgment motion, such belated claim not considered).
Although the court may look to a party's memorandum of law in opposition to a motion
to dismiss in order to "clarify allegations in . . . [a] complaint whose meaning is unclear,"
*Pegram v. Herdrich,* 530 U.S. 211, 230 n. 10 (2000) (citing cases), here the Complaint
is not lacking in clarity, rather, it is lacking in factual statements that Defendant created
a hostile work environment and constructively discharged Plaintiffs.  Thus, Plaintiffs'
Memorandum statements cannot constitute a viable pleading to avoid summary
judgment.  Notably, Plaintiffs have not sought leave to file an amended complaint to
assert a claim based on a hostile work environment or constructive discharge, nor, as
noted, Facts, *supra*, at 9, did Plaintiffs request to conduct discovery to develop
evidence, pursuant to Fed.R.Civ.P. 56(f) in order to oppose Defendant's motion.

Even assuming Plaintiffs exhausted required administrative remedies before the
EEOC as to Plaintiffs' charges of Defendant's harassment and intimidation, creating a
hostile work environment, based on Defendant's changes in Plaintiffs' teaching
assignments and additional classroom observations as stated in Plaintiffs' EEOC
Administrative Charges, and liberally construing Plaintiffs' allegations, Complaint ¶ 1

("Defendant . . . discriminated against [Plaintiffs] . . . through harassment and intimidation," (bracketed material added), ¶ 12 (same), as stating a hostile work environment claim, such charges and allegations are insufficient as a matter of law to support a claim of an adverse employment action based on such harassment and intimidation by Defendant, the only facts potentially describing a hostile work environment alleged in the Complaint.  In other words, although Plaintiffs may have alleged a hostile work environment claim that was properly exhausted before the EEOC, such claimed adverse employment action was limited by its own terms to the Defendant's discriminatory conduct which occurred in March 2004, and concededly did not lead to any constructive discharge of Plaintiffs at that time.  As discussed, Discussion, *supra*, at 20-25, because the sole basis of such a hostile work environment were the teaching reassignments and the extra classroom observations in 2004, as Plaintiffs allege, the claim is insufficient as a matter of law and Plaintiffs failed to submit any evidence demonstrating Defendant continued to harass and intimidate them on some other legally cognizable basis after this time period.

Second, although Plaintiffs maintain, Plaintiffs' Memorandum at 5, they informed Thompson, the EEOC investigator, on January 11, 2007, the same day the EEOC issued Plaintiffs' Right to Sue Letters formally closing the EEOC's investigation of Plaintiffs' EEOC Administrative Charges, Plaintiffs' Exhibit A, that, because of Defendant's continued harassment, they were compelled to retire at the end of June 2006, Plaintiffs failed to include in the record a copy of such letter.  As no allegations of a hostile work environment, continuing after Defendant's March 2004 classroom reassignments and classroom observations of Plaintiffs, and Plaintiffs' newly alleged

consequent constructive discharges are included in Plaintiffs' EEOC Administrative

Charges, Plaintiffs' present assertion of such claims in opposition to Defendant's motion

is time-barred because Plaintiffs have not demonstrated that these allegations were

presented to the EEOC in Plaintiffs' EEOC Administrative Charges, and the statutory

300-day period commencing March 5, 2004, the earliest (and last) day in which

Plaintiffs asserted Defendant's discriminatory acts occurred, Facts, *supra*, at 7, within

which Plaintiffs were required to file such charges with the EEOC, *see Holowecki,* 400

F.3d at 562 (ADEA charge required to be filed within the earlier of 300 days after the

alleged unlawful practice or within 30 days after termination of state agency

investigation), has long-since passed.

Finally, as with Plaintiffs' claims of Defendant's continued harassment and

intimidation resulting in a hostile work environment occurring after Defendant's

discriminatory actions in March 2004, as found by the EEOC, Plaintiffs' Memorandum

at 8, Plaintiffs' belated claims of their constructive discharges which occurred, according

to Plaintiffs, in February 2006 when Plaintiffs advised Defendant of their intent to retire

at the end of Defendant's 2005-2006 school year, nothing in the record supports

Plaintiffs' contention, Plaintiffs' Memorandum at 4-5, that such allegation was presented

to the EEOC or is reasonably related to Plaintiffs' EEOC Administrative Charges of

Defendant's ADEA violations which were considered, or could reasonably have been

considered, by the EEOC sufficient to overcome Defendant's argument that such

claims were not administratively exhausted.  Defendant's Memorandum at 5-6.

Specifically, Defendant maintains that Plaintiffs' attempt to raise a constructive

discharge claim, first asserted by Plaintiffs at the Rule 16(b) conference and, later, in

opposition to Defendant's motion based on assertions in Plaintiffs' Memorandum, must be rejected as Plaintiffs failed to exhaust their administrative remedies with respect to such claims.  *Id.*

"Exhaustion of administrative remedies through the EEOC is 'an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing claims in federal court.'"[12]  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).  As noted, Discussion, *supra*, at 18, to exhaust administrative remedies under the ADEA, Plaintiffs must have filed their complaints with the EEOC within 300 days of the alleged discriminatory conduct.  29 U.S.C. § 626(d)(2); *Holowecki*, 440 F.3d at 562.

"A federal court may only consider those ADEA claims that were included in the original EEOC charge or those that are reasonably related to that charge," *Del Franco v. New York City Off-Track Betting Corp.*, 429 F.Supp.2d 529, 541 (E.D.N.Y. 2006) (internal quotation omitted), *aff'd*, 245 Fed. Appx. 42 (2d Cir. 2007) (table), or those claims  which can "reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 83 (2d Cir. 2003)); *Cunningham v. Consol. Edison Inc.*, 2006 WL 842914, at *13 (E.D.N.Y. Mar. 28, 2006) ("[W]here subsequent claims are reasonably related to claims brought in an EEOC charge, the subsequent claims are not barred.").  A claim not specifically included in an

---

[12] Plaintiffs' Second Cause of Action, based on the NYHRL is not affected by Defendant's argument on this issue.  "[T]he NYSHRL . . . do[es] not require exhaustion of administrative remedies" before bringing a claim under the NYSHRL. *Reeve v. SEI/Aaron's, Inc.*, 2008 WL 905908, at * 3 (W.D.N.Y. Mar. 31, 2008) (citing *Hernandez v. New York City Law Dep't*, 1997 WL 27047, at *10 (S.D.N.Y. Jan. 23, 1997)); *Lumhoo v. Home Depot USA, Inc.*, 229 F.Supp.2d 121, 136 n. 13 (E.D.N.Y. 2002)).

EEOC charge is "reasonably related" to the charge if, for example, the subsequent claim is one for retaliation or where a subsequent claim "'alleges further incidents of discrimination carried out in precisely the same manner.'" *Katz v. Beth Israel Medical Center,* 2001 WL 11064, at * 6 (S.D.N.Y. Jan. 4, 2001) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397 at 1401 (2d Cir. 1992)).  Here, Plaintiffs have not shown a reasonable relationship between the Defendant's discriminatory practices, specifically the additional classroom observations and new teaching assignments in 2004, as Plaintiffs alleged in their EEOC Administrative Charges and Plaintiffs' subsequent retirements in 2006, now asserted by Plaintiffs, Plaintiffs' Memorandum at 5, as a constructive discharges constituting an adverse employment action by Defendant actionable under the ADEA.

Particularly, Plaintiffs contend that their constructive discharge claims were within the scope of the EEOC investigation directed to Plaintiffs' EEOC Administrative Charges and, as such, are reasonably related to these charges and thus exhausted, because Plaintiffs informed the EEOC investigator, Thompson, of Plaintiffs' constructive discharge claims before the EEOC investigation was formally concluded.  Plaintiffs' Memorandum at 5.  According to Plaintiffs, they informed Thompson of their retirement which occurred "at the end of the 2005-2006 school year due to the harassment relating to this charge," Facts, *supra,* at 9 (quoting Plaintiffs' Memorandum at 5) by a letter dated January 11, 2007 from their attorney, the same attorney of record in this action. However, unless Plaintiffs hand-delivered such letter to Thompson that same day, and before the EEOC issued the Right to Sue Letters, also dated January 11, 2007, Plaintiffs' Exh. A, Plaintiffs could not have so notified the EEOC of their eventual

retirement in 2006 before the conclusion of the EEOC's investigation of Plaintiffs' EEOC

Administrative Charges which were still then formally pending before the EEOC.

Notably, Plaintiffs neither allege, nor aver by affidavit, that they hand-delivered the

letters to the EEOC investigator on January 11, 2007, nor explain how the investigator

could plausibly have received the letters on that date.

Moreover, nowhere in the Determination Letters, issued seven months after

Plaintiffs notified Defendant on February 24, 2006 of their intention to retire in June

2006, did the EEOC mention the subject of Plaintiffs' eventual retirement, or even their

intent to retire in the future, voluntarily or otherwise.[13]   The absence of any reference to

Plaintiffs' expected or eventual retirement in the EEOC's Determinations Letters amply

supports the conclusion that, contrary to Plaintiffs' present representation, Plaintiffs'

letter (assuming such letter was in fact sent) to the EEOC investigator was not received

before the EEOC terminated its investigation of Plaintiffs' EEOC Administrative

Charges, and, on this record, no reasonable juror could find otherwise.  Significantly,

despite receiving the EEOC's September 26, 2006 Determination Letters stating that

Plaintiffs had not accepted Defendant's Early Retirement Incentive had "elected not to

retire", until January 11, 2007, nearly four months later Plaintiffs made no effort to

inform the EEOC that they considered their 2006 retirements, which took effect three

_____

[13] Rather, the EEOC's determination letters, issued on September 26, 2006, state that "Charging Part[ies] elected not to retire."  Plaintiffs' Exhibit B ("EEOC Determination Letters" ¶ 4) (underlining added). This statement would constitute an incomplete finding had the EEOC then known of Plaintiffs' intent to retire, given to Defendant in February 2006, or their subsequent retirements in June 2006.  It is unreasonable to assume that Thompson would not have taken further investigatory action had Plaintiffs' letter been received as Plaintiffs assert in opposition to Defendant's motion.  That Plaintiffs thought it necessary to attempt to inform the EEOC in 2007 that they considered their 2006 retirements to constitute constructive discharges, tends to undermine Plaintiffs' contention that such constructive discharges were reasonably related or within the reasonable scope of Plaintiffs' 2004 EEOC Administrative Charges filed.

months prior to the issuance of the EEOC's Determination Letters, were constructive

discharges caused by Defendant's age-related discrimination against Plaintiffs that

created a continuing hostile work environment maintained by Defendant after March

2004, including, presumably, the continuation of Plaintiffs' assignments to teach fifth

grade at the Fletcher School for the next two school years.

These undisputed facts demonstrate that the allegations in Plaintiffs' EEOC

Administrative Charges turned on Defendant's effort, as Plaintiffs had asserted, to

pressure Plaintiffs into accepting the Early Retirement Incentive to effect Plaintiffs'

retirements at the end of the 2003-2004 school year, not that Plaintiffs had alleged a

hostile work environment that could lead to their retirement two years later. The EEOC's

investigation was accordingly limited to Plaintiffs' allegations as stated in the Plaintiffs'

EEOC Administrative Charges and Plaintiffs' present hostile work environment and

constructive discharge claims are not reasonably related to the scope of the EEOC's

investigation.

Plaintiffs' present hostile work environment and constructive discharge claims

are predicated on the facts, now alleged by Plaintiffs, that after the events of March

2004, Plaintiffs were compelled to teach fifth grade under the burden of Defendant's

discriminatory reassignments for the next two school years, thereby eventually

achieving Defendant's objective of forcing Plaintiffs to retire in 2006, albeit not in

response to the Early Retirement Incentive offer.  These facts are at such variance with

the facts alleged by Plaintiffs in Plaintiffs' EEOC Administrative Charges as to require

an investigation by the EEOC of "events differing in time and nature" rendering

Plaintiffs' present claims not reasonably related to Plaintiffs' initial EEOC charges of

Defendant's age discrimination.  *Wiley v. Citibank, N.A.*, 2000 WL 122148 *4 (S.D.N.Y. Feb. 1, 2000) (failure to exhaust occurred where "[p]laintiff alleged factually distinct discriminatory practices in her constructive discharge claim that would require an investigation of events differing in time and nature" from the scope of agency investigation) ("plaintiff's constructive discharge in 1996 not alleged to be "directly a result of discrimination complaints filed with the agency in 1990 and 1992");  *see also Bridges v. Eastman Kodak Co.*, 822 F.Supp. 1020, 1026 (S.D.N.Y. 1993) ("[T]he factual allegations in the EEOC charge, rather than any legal theories stated therein, should be the focus for determining whether a cause of action is reasonably related to the plaintiff's EEOC charge.").  Here, nothing in Plaintiffs' EEOC Administrative Charges could reasonably be understood to state Plaintiffs' present assertions that a hostile work environment had been, first created in March 2004, was likely to eventuate in a constructive discharge when Plaintiffs decided to retire in 2006.  Certainly, a fair reading of the EEOC's Determination Letters indicate the EEOC did not understand Plaintiffs to have alleged any such facts.  *See* Plaintiffs' Exh. B.  Accordingly, Plaintiffs' present hostile work environment and constructive discharge claims differ significantly in "time and nature," *Wiley,* 2000 WL 122148 *4, from the EEOC's actual, or reasonably expected, scope of investigation, and therefore are not reasonably related to Plaintiffs' EEOC Administrative Charges.

Plaintiffs nevertheless maintain that their constructive discharge claims were exhausted because such claims fell within the scope of the EEOC's investigation as "further incidents" of discriminatory treatment identical to those alleged in the EEOC charge."  Plaintiffs' Memorandum at 4 (citing *Hudson v. Potter,* 497 F.Supp.2d 491, 503

(W.D.N.Y. 2007) (citing *Butts*, 990 F.2d at 1402)).  However, this exception to the

exhaustion requirement applies where the plaintiff "alleges" such further "incidents" of

discrimination.  *Hudson*, 497 F.Supp.2d at 503 (underlining added).  Here, as

discussed, Discussion, *supra*, at 23-26, the record is devoid of any factual allegations of

such further "incidents."  While, based on the record, it may be presumed that Plaintiffs

continued to be assigned to teach fifth grade from September 2004 to June 2006, no

discriminatorily motivated additional classroom observations of Plaintiffs' teaching skills

or other forms of extra administrative scrutiny are stated by Plaintiff to have occurred

after March 2004, and Plaintiffs make no attempt to explain why the EEOC should have

been reasonably prompted to suspect that Plaintiffs, not having acquiesced in

Defendant's alleged effort to force Plaintiffs to retire early, *i.e.*, at the end of the 2003-

2004 school year, by accepting the Early Retirement Incentive offer, would nevertheless

continue their employment with Defendant resulting in their coerced retirements in

2006.  Although the EEOC found Defendant's actions in March 2004 constituted

discriminatory actions, nothing in the Determination Letters suggests the EEOC also

found Defendant's conduct created a hostile work environment causing Plaintiffs'

constructive discharges letter in 2004 or thereafter.  On this record, no reasonable juror

could find otherwise, and Defendant is therefore entitled to summary judgment on this

issue.

Plaintiffs also maintain that because they accused Defendant of "harassment

and intimidation" in their EEOC Administrative Charges in 2004 and later, in 2007,

alleged in the Complaint, Complaint ¶ ¶  1, 12, that such harassment and intimidation

were based on "increased formal [classroom] observations and administrative visits,

and [that Plaintiffs were] reassigned in an effort to force them to take the Early

Retirement Incentive," Complaint ¶ 12, Plaintiffs' constructive discharge claims are

reasonably related to the allegations in Plaintiffs' EEOC Administrative Charges, as "no

factually distinct events that differed in time or nature precipitated the [2006]

retirement." Plaintiffs' Memorandum at 6 (bracketed material added).  For an allegation

of discriminatory conduct to be reasonably related to an EEOC administrative charge,

such additional and unpleaded claim must be one that can "reasonably be expected to

grow out of the charge of discrimination," *Del Franco*, 429 F.Supp.2d at 541, or one that

is "reasonably related" to the original claim.  *Cunningham*, 2006 WL 842914 at *13.

*See Curry v. Federal Express Corp.*, 2006 WL 839426, at *6 (W.D.N.Y. Mar. 28, 2006)

(failure of plaintiff to allege constructive discharge in EEOC administrative charge of

defendant's Title VII violations requires summary judgment against such claim).  *See*

*also Chandler*, 251 F.Supp.2d at 1179.

Given that after the March 2004 incidents Plaintiffs waited nearly two years to

announce their intention to retire at the end of the 2005-2006 school year and alleged,

in either Plaintiffs' EEOC Administrative Charges, any subsequent administrative

charges filed with the EEOC, or the Complaint, no additional specific acts of

harassment or intimidation against Defendant, to which Plaintiffs were subjected during

such two year period, to find that Plaintiffs' eventual retirement in 2006 was "reasonably

related," *Del Franco*, 429 F.Supp.2d at 541, or could "reasonably be expected to grow

out of the [Plaintiffs'] charge of discrimination," *Cunningham*, 2006 WL 842914 at *13,

or constitutes a further "incident of discrimination carried out in precisely the same

manner alleged in the EEOC charged," *Butts,* 990 F.2d at 1402-03, based on the

discriminatory incidents attributed to Defendant in March 2004, is unsupported by the facts. Nor, as discussed, Discussion, *supra*, at 27-29, have Plaintiffs pointed to any evidence to require trial on this issue.  Thus, there is no merit in Plaintiffs' contention that their present claims of hostile work environment and constructive discharge have been administratively exhausted, and Defendant's request for summary judgment cannot be avoided on this ground.

Plaintiffs' reliance on *Whitlow v. Visiting Nurses Assoc.*, 420 F.Supp.2d 92 (W.D.N.Y. 2005), Plaintiffs' Memorandum at 7, is unavailing.  In *Whitlow*, the court found plaintiff had exhausted her administrative remedies where plaintiff charged that defendant had changed her working conditions so as to render her "unable to do her job," thereby setting forth facts that could be reasonably expected to support a claim that defendant had thereby created a hostile work environment compelling plaintiff to resign two months after filing her EEOC charge.  *Whitlow*, 420 F.Supp.2d at 102.  Here, Plaintiffs never charged before the EEOC in 2004 that their teaching reassignments would make it difficult to continue to teach at the Fletcher School by complying with Defendant's change in Plaintiffs' teaching assignments, for the immediate future, and certainly not for a continuing period of nearly two years from September 2004, the effective date of the teaching reassignments Defendant announced in March 2004. Rather, Plaintiffs charged only that Defendant's announcement of the reassignments were a form of harassment calculated to force Plaintiffs to accept the Early Retirement Incentive, an effort that Plaintiffs concede proved unsuccessful.  As such, Plaintiffs' 2004 charges filed with the EEOC are inconsistent with their present allegations of the existence of a hostile work environment, created by Defendant's teaching

reassignments of Plaintiffs, lasting over two years thereafter which eventually compelled Plaintiffs to retire earlier than they might have otherwise.  Over that same period, the EEOC considered Plaintiffs' initial charges and its failure to make any reference to Plaintiffs' 2006 retirements demonstrates Plaintiffs' allegations of hostile work and constructive discharge are not reasonably related to Plaintiffs' EEOC Administrative Charges.  *Whitlow* is therefore factually distinguishable, and does not support Plaintiffs' assertion that their present hostile work environment and related constructive discharge claims were administratively exhausted.

Even if Plaintiffs' respective new teaching assignments were found to be reasonably related to Plaintiffs' age-discrimination claims presented to the EEOC, no evidence is submitted by Plaintiffs upon which it could be found that such assignments were so materially adverse as to be actionable or, for that matter, that a reasonable juror could find the new teaching assignments substantially and adversely affected Plaintiffs' retirement decisions nearly two years later.  Discussion, *supra,* at 20-25.  As in *Galabya*, Plaintiffs have not shown that their designations to teach fifth grade for the 2004-2005 school year amounted to "assignment[s] that [were] materially less prestigious, materially less suited to [their] skills and expertise, or materially less conducive to career advancement."  *Galabya*, 202 F.3d at 641.  Moreover, the record is devoid of evidence of any further classroom observations of Plaintiffs, negative evaluations, any other such observations of Plaintiffs or other administrative actions directed to Plaintiffs by Defendant, or other evidence of discriminatory conduct, including acts constituting harassment or intimidation, against Plaintiffs based on Plaintiffs' ages by Defendant alleged to have occurred during the two-year period

between the classroom observations of Plaintiffs by Defendant in March of 2004 and

Plaintiffs' later decision to take retirement as they announced in February 2006.

Although Plaintiffs insist that Plaintiffs' constructive discharges in 2006 were the result

of "further incidents" similar to Defendant's discriminatory conduct in March 2004,

Plaintiffs' Memorandum at 4, the record reveals no allegations or evidence of such

"further incidents."  Moreover, as noted, Discussion, *supra*, at 20-21, nowhere in this

record do Plaintiffs aver that but for their continued fifth grade teaching assignments, as

directed by Defendant in March 2004, they would not have retired in 2006, but, rather,

would have continued to teach first and second grades at the Fletcher School as they

had prior to September 2004.

    Although Plaintiffs contend that their opposition to Defendant's motion reveals

"clear issues of material facts" supporting Plaintiffs' ADEA claims, Plaintiffs'

Memorandum at 2 (referencing Point III at 8 of Plaintiffs' Memorandum), a careful

reading of the referenced discussion reveals only a reiteration by Plaintiffs that

"Defendant's discriminatory reassignment and increased supervision of Plaintiffs

created a hostile work environment sufficient to maintain an ADEA claim."  *Id.* at 9.

However, Plaintiffs point to no evidence of any such reassignments (assuming the

Plaintiffs' fifth-grade teaching assignments were discriminatorily continued after

expiration of the Early Retirement Incentive offer in April 2004) or increased supervision

of Plaintiffs after Defendant's March 2004 actions, and Plaintiffs' subjective (and

apparently previously undisclosed) perceptions of Defendant's "harassment and malice"

associated with these purported actions do not constitute admissible evidence.  *See*

*Beyer v. County of Nassau,* 524 F.3d 160, 164 (2d Cir. 2008) (plaintiff's "subjective,

personal disappointment" insufficient to establish a triable issue of the existence of a

hostile work condition) (citing *Williams,* 368 F.3d at 128 and quoting *Galabya,* 202 F.3d

at 640).  Even if the court were to consider Plaintiffs' proffer of the EEOC's

Determination Letters, Plaintiffs' Exh. B, as evidence favorable to Plaintiffs in opposition

to Defendant's motion, *see* Discussion, *supra*, at 16-17, the EEOC's findings are based

solely on Defendant's actions which occurred in March 2004, specifically Plaintiffs'

teaching reassignments and classroom observations, conduct that is insufficient as a

matter of law to establish an adverse employment action under the ADEA.  Discussion,

*supra*, at 20-25.

As such, no reasonable juror could find that Plaintiffs' March 2004 evaluations

and the announced teaching reassignments were other than isolated incidents, neither

severe in nature nor part of a continuing pattern of discrimination against Plaintiffs

capable of creating an abusive working environment resulting in a subsequent

constructive discharge.  *See Harris*,  510 U.S. at 23; *Terry*, 336 F.3d at 147-48; *Cruz,*

202 F.3d at 570.  Therefore, based on this record, no reasonable juror could find that

Plaintiffs' assignments to teach fifth grade, grades Plaintiffs were undisputedly qualified

to teach and which were permitted under the CBA, and the two classroom observations

in March 2004, together with the April 2003 classroom observations of Plaintiffs, the

only evidence of age-related discrimination by Defendant relied on by Plaintiffs in

opposition to Defendant's motion, were sufficiently severe or pervasive to create a

hostile work environment resulting in Plaintiffs' alleged constructive discharges.  Nor

could a reasonable juror find, on this record, that a reasonable employee in Plaintiffs'

position would have required approximately one and one-half years of being subjected

to Defendant's fifth-grade teaching assignments before deciding that such working conditions were so intolerable as to compel Plaintiffs' to retire four months after serving notice of their intent to do so.[14]   Accordingly, Defendant's request for summary judgment directed to Plaintiffs' ADEA claims, including Plaintiffs' hostile work environment claim and Plaintiffs' claim for constructive discharge, should be GRANTED.

Defendant alternatively seeks judgment pursuant to Fed.R.Civ.P. 12(c) ("Rule 12(c)") directed to Plaintiffs' ADEA claims, in particular Plaintiffs' unpleaded constructive discharge claim.   Defendant's Memorandum at 9.   If the Chief District Judge agrees that Defendant's motion for summary judgment on Plaintiffs' ADEA claims should be GRANTED, it is unnecessary to address Defendant's request for judgment on the pleadings directed to Plaintiffs' ADEA claims pursuant to Rule 12(c).   However, in the interest of completeness, the court turns to Defendant's Rule 12(c) request.   A motion for judgment on the pleadings pursuant to Rule 12(c) may be granted "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."   *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citing *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987)).

---

[14]   It is incorrect to contend that because Plaintiffs' ADEA claims are subject to summary judgment based on Plaintiffs' failure to allege in their EEOC Administrative Charges constructive discharges that, according to Plaintiffs, took place over two years later, Plaintiffs have been the victims of a legal "Catch-22."   Plaintiffs' Memorandum at 2.   Nothing precluded Plaintiffs from amending their EEOC Administrative Charges, indicating in the charges that Defendant's violations were expected to continue, filing new charges alleging a hostile work environment and constructive discharge in 2006, amending the Complaint to specify these claims, or instituting a subsequent action alleging an on-going hostile work environment and related forced retirements in 2006 Plaintiffs now attempt to assert in this action.   Any supposed "Catch-22" is therefore the result of Plaintiffs' own inaction.

"[T]o prevail on a hostile work environment claim under . . . the ADEA, a plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003) (internal quotations omitted).  In particular, Plaintiffs must show "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [Plaintiffs'] working environment."  *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000) (internal quotation omitted).  For a plaintiff to establish a constructive discharge claim, "'[t]he trier of fact must be satisfied that the . . . working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Pena,* 702 F.2d at 325 (quoting *Rosado v. Santiago*, 562 F.2d 114, 119 (1st Cir. 1977)).

Here, as discussed, Discussion, *supra*, at 25, a fair reading of the Complaint demonstrates that other than Defendant's March 2004 teaching assignments and classroom observations, Plaintiffs did not allege any actions by Defendant after March 2004 created a hostile work environment.  Even if Plaintiffs' allegations that Defendant's actions in changing Plaintiffs' teaching assignments and subjecting them to improper classroom observations are considered as alleging a hostile work environment, such allegations in support of this claim are insufficient, as a matter of law, to satisfy Plaintiffs' burden to establish an adverse employment action as a required element of Plaintiffs' ADEA claims.  Discussion, *supra*, at 20-25.  If Plaintiffs believed, as they now assert, Defendant continued to harass and intimidate them after the expiration in April 2004 of Defendant's Early Retirement Incentive offer extended to Plaintiffs in March

2004, including a continuation of Plaintiffs' teaching reassignment to teach fifth grade, starting with the beginning of the 2004-2005 school year, thereby created an on-going hostile work environment, Plaintiffs' EEOC Administrative Charges and the Complaint are surprisingly devoid of any allegations describing the factual basis of such harassment and intimidation as required by Fed.R.Civ.P. 8(a)(2) (requiring "a short plain statement of the claim.") and Fed.R.Civ.P. 12(b)(6) (to avoid dismissal for failure to state a claim complaint must allege sufficiently "facts to state a claim to relief that is plausible on its face." *Iqbal v. Hasty*, 490 F.3d 143, 156 (2d Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 156 (2007)).

Further, the Complaint does not plead Plaintiffs were constructively discharged, nor did Plaintiffs present this claim to the EEOC.  Discussion, *supra*, at 25-26.  Rather, Plaintiffs' assertion of constructive discharge was made for the first time on the record when Plaintiffs, through their attorney, raised such claim during the Rule 16(b) hearing, Discussion, *supra*, at 11, and, later, in Plaintiffs' Memorandum in opposition to Defendant's motion.  Plaintiffs' Memorandum at 2.  As Plaintiffs' belated assertion of a constructive discharge claim based on their 2006 retirement decision, which occurred well after Defendant's discriminatory actions in 2004, was neither administratively exhausted nor pleaded in this action, the court will not consider such allegation of an adverse employment action in opposition to Defendant's motion.  *See Kearney v. County of Rockland*, 373 F.Supp. 434, 440-41 (S.D.N.Y. 2005) (plaintiff's attempt to present hostile work environment claim in legal memorandum in opposition to summary judgment will not be considered as a basis to avoid summary judgment) (citing cases).

Thus, should the Chief District Court Judge reach the merits of Defendant's Rule

12(c) request, as the Complaint fails to allege either an actionable hostile work environment or constructive discharge, or any other material and adverse change of working conditions sufficient to demonstrate Plaintiffs suffered an adverse employment action by Defendant actionable under the ADEA, *Chandler*, 215 F.Supp.2d at 1183 (ADEA requires as an element materially adverse changes in terms and conditions of employment), and no evidence is presented to demonstrate the existence of material issues of fact relating to such issues, Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) directed to Plaintiffs' ADEA claims should be GRANTED.[15]

## II.   Plaintiffs' NYHRL Claims

### A.   Dismissal Pursuant to 28 U.S.C. § 1367(c)(3)

As noted, Background, *supra*, at 2, in Plaintiffs' Second Cause of Action, Plaintiffs alleged Defendant also violated their rights under Section 290 of the New York Executive Law ("Plaintiffs' NYHRL Claim").  Although not addressed by the parties, where the district court has dismissed upon summary judgment all claims over which it has original jurisdiction, in this case Plaintiffs' ADEA claims, Plaintiffs' First Cause of Action, in the absence of exceptional circumstances, the court may decline to exercise supplemental jurisdiction over Plaintiffs' pendent state law claim under the NYHRL pursuant to  28 U.S.C. § 1367(c)(3) (" § 1367(c)(3)").  *See Birch v. Pioneer Credit*

---

[15]  Given that Plaintiffs' ADEA claims are subject to summary judgment, it is unnecessary to address whether Plaintiffs' failure to allege an exhaustion of administrative remedies also requires relief under Rule 12(c) as Defendant contends.  *See* Defendant's Memorandum at 5-9 (arguing that Plaintiffs' constructive discharge claims not exhausted and requesting relief pursuant to Rule 12(c) or Fed.R.Civ.P. 56).  The court notes that Plaintiffs did allege an exhaustion of administrative remedies regarding their ADEA claims and received, eventually, right-to-sue letters.  Complaint ¶ 8, Plaintiffs' Exh. A.

*Recovery, Inc.*, 2007 WL 1703914, *5 (W.D.N.Y. June 8, 2007) (citing and quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.), *cert. denied*, 476 U.S. 1159 (1986)).  It is fundamental that a district court is required to raise, *sua sponte*, questions going to its subject matter jurisdiction. *Digitel, Inc. v. MCI Worldcom, Inc.*, 239 F.3d 187, 189-90 & n. 2 (2d Cir. 2001) (district court may *sua sponte* dismiss for obvious lack of subject matter jurisdiction).

        "When deciding [whether] to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of litigation, the values of judicial economy, convenience, fairness, and comity."   *Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist.*, 2007 WL 4553932, at * 4 (W.D.N.Y. Dec. 20, 2007) (bracketed material added).  "In general, where the federal claims are dismissed before trial, the state law claims should be dismissed as well." *Marcus v. AT&T Corp.,* 138 F.3d 46, 57 (2d Cir. 1998); *see also Giordano v. City of N.Y.,* 274 F.3d 740, 754 (2d Cir. 2001) (once federal claims are dismissed, whether plaintiff is disabled under New York state law "is a question best left to the courts of the State of New York").   "[T]the discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience and fairness to litigants."  *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (citing *Castellano v. Bd. of Tr.*, 937 F.2d 752, 758 (2d Cir. 1991)).  Where "dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.  Nor is it by any means necessary.'" *Purgess*,  33 F.3d at 138 (quoting 28 U.S.C. § 1367, Practice Commentary

(1993) at 835).

A district court abuses its discretion by exercising supplemental jurisdiction over state law claims, despite the dismissal of all federal claims, "where the federal claims had been dismissed at a relatively <u>early</u> stage and the remaining claims involved issues of state law that were unsettled."  *Valencia ex. rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (underlining added) (citing *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001)); *see also Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 64 (2d Cir. 2001); *Seabrook v. Jacobson*, 153 F.3d 70, 71-73 (2d Cir. 1998)).  In contrast, a district court's decision to retain state claims after dismissing all federal claims where the question arises late in the proceedings will be affirmed.  *See Purgess*, 33 F.3d at 139 (holding district court did not abuse its discretion by exercising supplemental jurisdiction over state claims where four of five federal claims were dismissed on the eve of trial, final federal claim was dismissed after the close of all the evidence, the parties had spent years preparing for trial in federal court, jury had heard evidence for several days and was ready to begin deliberations, and it would have been wasteful to subject case to another full trial before a different tribunal).

Here, as it is recommended that summary judgment, or, alternatively, judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) be GRANTED as to Plaintiffs' ADEA claims, Plaintiffs' sole federal claim, over which this court has subject matter jurisdiction, the court finds that the Chief District Judge could decline, pursuant to 28 U.S.C. § 1367(c)(2),(3), to exercise supplemental jurisdiction over Plaintiffs' state law NYHRL claims, thereby allowing Plaintiffs to refile such claims in New York Supreme Court. Procedurally, this action is "at a relatively early stage," *Valencia ex. rel. Franco*, 316

F.3d at 306, as, by order dated September 22, 2008, at the request of the parties, any on-going discovery will conclude on March 31, 2009, and mediation sessions may continue, in accordance with Section 5.11 of the court's ADR Plan, until June 26, 2009 (Doc. No. 29).  Thus, if summary judgment or judgment on the pleadings is granted as to Plaintiffs' sole federal ADEA claims, as recommended, dismissal of Plaintiffs' pendent state NYHRL claims, Plaintiffs' Second Cause of Action, would not be an abuse of discretion.  *Id*.

However, although the instant action remains in an early stage based on the absence of extensive pre-trial discovery, and therefore warrants dismissal pursuant to § 1367(c) of Plaintiffs' pendent NYHRL claims, because granting Defendant's motion directed to Plaintiffs' ADEA claims, as recommended, effectively disposes of the merits of Plaintiffs' NYHRL claims, *see Wanamaker v. Columbian Rope Company*, 108 F.3d 462, 467 (2d Cir. 1997) ("Age discrimination claims brought under the New York State Human Rights Law, N.Y. Exec. Law § § 290-301, are governed by the same standards as those brought under the ADEA.") (citing *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1158 (2d Cir. 1993)), the court finds dismissal of Plaintiffs' pendent state claims with the consequence of refiling such claims in state court would result in judicial inefficiency and an unnecessary burden on the New York Supreme Court.  *See Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722, 731-32 (7th Cir. 2001) (abuse of discretion to dismiss state cause of action when disposition of federal claim left nothing of state claim for state court to decide, or when substantial investment of judicial resources have already been expended and dismissal would result in a potential "duplication of effort" and judicial inefficiency) (quoting *Wright v. Associated Ins.*

*Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).  *See also Price v. General Motors Corporation,* 2007 WL 2461784, *5 (W.D.N.Y. Aug. 24, 2007) (Arcara, C.J.) (granting summary judgment on plaintiff's ADEA and NYHRL claims where state pendent claim subject to same standards as federal ADEA claim and noting that the federal and state claims are "intertwined") (citing *Raskin v. Wyatt Co.*, 125 F3.d 55, 60 (2d Cir. 1997) (ADEA and NYHRL claims receive same analysis as Title VII claims).  Accordingly, it is recommended, based on this exceptional circumstance, if Defendant's motion, directed to Plaintiffs' ADEA claims is GRANTED, that the Chief District Judge retain supplemental jurisdiction over Plaintiffs' NYHRL claims and address the merits of Defendant's motion directed to such claims.

**B.    Notice of Claim and Statute of Limitations Requirements Applicable to Plaintiffs' NYHRL Claims[16]**

**1.    Timeliness of Plaintiffs' Notice**

In the event the Chief District Judge retains jurisdiction over Plaintiffs' state claims, Defendant's Rule 12(c) motion directed to such claims should be GRANTED. Specifically, Defendant first argues that Plaintiffs' state law claims pursuant to the NYHRL be dismissed pursuant to Rule 12(c) for failure to plead, as required by applicable state law, that Plaintiffs complied with notice of claim requirements, applicable to a school district, like Defendant, under New York law.  Defendant's Reply

---

[16]  Although Plaintiffs' NYHRL claims are subject to dismissal based on the same analysis applicable to Plaintiffs' ADEA claims, because the parties submitted extensive briefing on whether Plaintiffs' claims are subject to dismissal on these substantive grounds, and in the event the Chief District Judge denies Defendant's motion directed to Plaintiffs' ADEA claims, the court elects to consider the issue as presented by the parties.

Memorandum at 2.  As discussed, a claim is subject to a judgment on the pleadings pursuant to Rule 12(c), where the relevant facts are undisputed and the movant is entitled to a judgment based on the allegations contained in the pleadings.  Discussion, *supra*, at 33-34.  Specifically, Defendant contends that Plaintiffs failed to alleged in the Complaint Plaintiffs filed a notice of claim with the District as required by Section 3813[1] of the New York Education Law ("§ 3813"),[17] and that even if Plaintiffs' EEOC Administrative Charges, mailed to the District on June 30, 2004 by the EEOC, may constitute valid notices of claim under § 3813, the mailing of Plaintiffs' EEOC charges to the District did not satisfy § 3813's prerequisites to suit based on Plaintiffs' NYHRL claims because such notice was not timely served upon the District, particularly its governing body, as required by § 3813.  Defendant's Memorandum at 3-4.

Subsequent to filing its motion, Defendant, in a letter to the court, further contends that Plaintiffs' NYHRL claims are barred by the applicable New York statute of limitations, *i.e.*, the claims were not filed in this court within one-year of their accrual as required by N.Y. Educ. Law § 3813[2-b] (" § 3813[2-b]").  Defendant's Letter (citing *Amorosi v. S. Colonie Indep. Cent. Sch. Dist.*, 880 N.E.2d 6, 8 (N.Y. 2007) (citing § 3813[2-b]).  In opposition, Plaintiffs contend that their EEOC Administrative Charges, submitted by mail to the District's Superintendent by the EEOC, comply with the notice of claim requirements under § 3813, Plaintiffs' Memorandum at 3-4, and, in Plaintiffs' Letter, Plaintiffs also, *inter alia,*[18] assert that the state one-year period of limitations

---

[17] References to N.Y. Educ. Law are to McKinneys 2001, unless indicated otherwise.

[18]  Plaintiffs argue that Defendant's failure to rely on the state statute of limitations defense was not asserted in Defendant's motion, however, the court exercises its discretion and addresses the issue as Plaintiffs have had an opportunity to rebut the argument.  *See* Plaintiffs' Letter.

period, under § 3813[2-b], applicable to their NYHRL claims, were tolled pending the

District's receipt of the EEOC's Determination Letters in 2006.  Plaintiffs cite no

authority in support of this proposition, and Defendant did not respond to this argument.

New York Education Law § 3813 requires an aggrieved party, seeking to

commence an action under state law against a school district, file a timely notice of

claim.  *Rure Assocs., Inc. v. DiNardi Const. Corp.*, 917 F.2d 1332, 1334-35 (2d Cir.

1990) (citing *In re Bd. of Educ. of Enlarged Ogdensburg City Sch. Dist.*, 333 N.E.2d

353, 356 (N.Y. 1975)).   Specifically, § 3813, as relevant, provides

> No action or special proceeding, for any cause whatever, . . .
> shall be prosecuted or maintained against any school district
> . . . unless it shall appear by and as an allegation in the
> complaint . . . a written verified claim upon which such action
> or special proceeding is founded was presented to the
> governing body of said district or school within three months
> after the accrual of such claim.

N.Y. Educ. Law § 3813[1].

"[T]he purpose of section 3813 of the Education Law is to give a school district prompt

notice of claims 'so that investigation may be made before it is too late for investigation

to be efficient.'"  *Parochial Bus Sys., Inc. v. Bd. of Educ. of New York*, 458 N.E.2d 1241,

1244 (N.Y. 1983) (quoting *Matter of Bd. of Educ. [Wager Constr. Corp.]*, 333 N.E.2d

353 (N.Y. 1975)).  "Satisfaction of [the § 3813's notice] requirements is a condition

precedent to bringing an action against a school district or board of education . . .."

*Parochial Bus Sys., Inc.*, 458 N.E.2d at 1245 (bracketed material added).  To be

compliant with § 3813, a notice of claim must disclose the nature of the claim, as well

as when, where and how the claim arose.  *Donlon v. Bd. of Educ. of Greece Cent. Sch.*

*Dist.*, 2007 WL 108470, at *2 (W.D.N.Y. Jan. 12, 2007).  Courts have held that timely service of a plaintiff's EEOC employment discrimination charge upon a school district substantially complies with § 3813.  *Donlon*, 2007 WL 108470, at *3 (citing cases); *Kushner v. Valenti*, 285 F.Supp.2d 314, 316 (E.D.N.Y. 2003) (service of EEOC charge on district's personnel director constituted "sufficient" compliance with § 3813).  *Contra Santiago v. Newburgh Enlarged City School Dist.*, 434 F.Supp.2d 193, 196 (S.D.N.Y. 2006).  For purposes of complying with the notice of claim prerequisites under § 3813, a plaintiff's claim against a school district accrues "when [plaintiff's] damages accrued (as distinguished from the event which incurs them), that is when their damages are ascertainable."  *In re Bd. of Educ. of Enlarged School of Ogdensburg City Sch. Dist.*, 33 N.E.2d at 357 (citing cases) (bracketed material added; material in parenthesis in original).  *See also Hoger v. Thomann*, 592 N.Y.S.2d 887, 888 (3d Dep't. 1993) (plaintiff's claims based on sex discrimination accrued when school board terminated plaintiff following supervisor's adverse evaluation allegedly based on plaintiff's sex, not while plaintiff was subjected to such evaluations); *see also Jamieson v. Poughkeepsie City Sch. Dist.*, 195 F.Supp.2d 457, 467 (S.D.N.Y. 2002) (plaintiff's race discrimination claim under NYHRL accrued when school board voted not to renew plaintiff's contract as school superintendent).

Generally, "[s]tate notice of claim statutes apply to pendent state law claims in federal court."  *Longi v. County of Suffolk*, 2008 WL 858997, at * 8 (E.D.N.Y. Mar. 27, 2008) (citing *Hardy v. New York City Health & Hosp. Corp.,* 164 F.3d 789, 793 (2d Cir. 1999)); *see also Maloney v. McFarland Johnson, Inc.,* 2006 WL 2135788, at * 9 n. 10 (W.D.N.Y. July 28, 2006) (applying state law to diversity action to determine when

action was commenced and if tolled). "It is well established that the notice of claim requirements of § 3813 is [*sic*] applicable to employment discrimination claims brought against a school district pursuant to the [NYHRL]."  *Newman v. LeRoy Cent. Sch. Dist.*, 2008 WL 974699, at * 2 n. 2 (W.D.N.Y. Apr. 8, 2008) (internal quotation omitted) (bracketed material added); *see also Courtemanche v. Enlarged City Sch. Dist. of Middletown, N.Y.*, 686 F.Supp. 1032, 1032 (S.D.N.Y. 1988) (§ 3813 applied to the pendent state law claim and holding § 3813's requirements "are substantive, not procedural").

Under § 3813, Plaintiffs, as a prerequisite to suit against the District, must "plead and prove compliance with the requirements of § 3813."  *Grennan v. Nassau County*, 2007 WL 952067, at * 17 (E.D.N.Y. Mar. 29, 2007) (citing *Warner v. Village of Goshen Police Dept.,* 256 F.Supp.2d 171, 175 (S.D.N.Y. 2003); *Stoetzel v. Wappingers Cent. Sch. Dist.,* 561 N.Y.S.2d 71, 72 (2d Dep't. 1990)).[19]  *See also Courtemanche v. Enlarged City School Dist. of the City of Middletown, New York,* 686 F.Supp. 1025, 1032 (S.D.N.Y. 1988) (§ 3813's notice of claim requirements are substantive and applicable to New York state law pendent claims).

Here, Plaintiffs represented to the EEOC, Colby Reply Decl. Exh. A, and alleged in the Complaint, Complaint ¶ ¶ 12-13, that Defendant's assignment of Plaintiffs to teach fifth grade and the additional classroom observations following Plaintiffs' teaching reassignments in March 2004 constituted discriminatory adverse employment actions

---

[19] *Cf. In re Hurley v. Avon Cent. School Dist.*, 591 N.Y.S.2d 643, 644 (4th Dep't. 1992) (plaintiff has burden of establishing that school district had actual knowledge of the claim "within a reasonable time."); *McCann v. State*, 694 N.Y.S.2d 328, 333 (N.Y. Ct. Cl. 1999) (citing *In re Hurley, supra,* to support finding "[t]he burden of establishing that Education Law § 3813(1) has been complied with is upon the injured party.")).

by Defendant.  However, in the Second Cause of Action, alleging Defendant's actions

as the basis for Plaintiffs' NYHRL claims, the Complaint fails to allege that written

notices of Plaintiffs' claims were presented to the Defendant in strict compliance with §

3813, and refused by Defendant as also required by § 3813.  N.Y. Educ. Law. §

3813[1].  Relevantly, the three-month period, established by § 3813, within which to do

so has long-since passed.  Thus, Plaintiffs did not in their allegations in the Complaint,

and cannot now, comply with § 3813.

Moreover, even if, as Plaintiffs presently insist, Plaintiffs' Memorandum at 7,

Plaintiffs could not have asserted constructive discharge claims in Plaintiffs' EEOC

Administrative Charges, based on their subsequent respective retirements in 2006,

before such claim accrued in 2006, Plaintiffs do not explain why they failed to serve a

timely notice of claim, in accordance with § 3813, with Defendant based on their 2006

retirements asserting Plaintiffs were constructively discharged as adverse employment

actions by Defendant under the NYHRL.  *Wanamaker,* 108 F.3d at 467 ("Age

discrimination claims brought under the New York State Human Rights Law, N.Y. Exec.

Law §§ 290-301, are governed by the same standards as those brought under the

ADEA.").  This oversight by Plaintiffs creates a substantive lack of compliance with §

3813 as there is no reference in Plaintiffs' EEOC Administrative Charge to Plaintiffs'

intention to retire at any time in the foreseeable future after March 2004, particularly in

June 2004, nor to Plaintiffs' intent to retire in 2006, because of a continuation of

Defendant's harassment manifested in Plaintiffs' 2004 teaching reassignments or the

expected continuation of such assignments through 2006.  Thus, Defendant had no

timely notice of Plaintiffs' belated hostile work environment and constructive discharge

claims, nor their intention to file such claims in the future, in violation of the fundamental purpose of § 3813 as declared by New York courts.  *See Donlon,* 2007 WL 108470 at *2 (purpose of § 3813 is to provide district with prompt notice of nature, time, place and manner of claim).

However, "[t]he prerequisites of [§ 3813] apply only to those actions which seek the enforcement of private rights, as opposed to those actions that seek the vindication of a public interest."  *Newman*, 2008 WL 974699, at * 3 (citing cases) (bracketed material added); *Biggers v. Brookhaven-Comseqogue Union Free Sch. Dist.*, 127 F.Supp.2d 452, 455 (S.D.N.Y. 2001) (citing cases); *Mills v. Monroe County*, 451 N.E.2d 307, 458 (N.Y. 1983), ("[A]ctions that are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group" are exempt from § 3813's notice requirements) (citing *Union Free Sch. Dist. No. 6 of Towns of Islip & Smithtown v. New York State Human Rights Appeals Bd.*, 320 N.E.2d 859, 862-63 (N.Y. 1974)), *cert. denied*, 464 U.S. 1018 (1983).  An action might be brought in the public interest if, for example, it is "a class action brought to protect civil rights."  *Drees v. County of Suffolk*, 2007 WL 1875623, at *14 (E.D.N.Y. June 27, 2007); *see Atkins v. County of Orange*, 251 F.Supp.2d 1225, 1235 (S.D.N.Y. 2003) (citing *Finley v. Giacobbe*, 827 F.Supp. 215, 220 (S.D.N.Y. 1993) (although plaintiff's claim may positively affect the public interest, it was not "more imbued with the "public interest" than those of other state human rights plaintiffs")); *Turner v. County of Suffolk*, 955 F.Supp. 175, 177 (E.D.N.Y. 1997) ("Inasmuch as the disposition of plaintiff's claim was not intended to nor could it directly affect or vindicate the rights of others, [plaintiff's] action is properly

characterized as one seeking the enforcement of private rights").  As "[a]ll actions

brought to enforce civil rights can be said to be in the public interest," *Biggers,* 127

F.Supp.2d at 455 (quoting *Mills*, 451 N.E.2d at 458), "the public interest exception [to

§3813's  notice of claim requirement] does not apply when plaintiffs are seeking money

damages for the sole purpose of redressing plaintiffs' individual injuries."  *Drees*, 2007

WL1875623, at *14 (quoting *Atkins*, 251 F.Supp.2d at 1235 ) (bracketed material

added).

In the instant case, § 3813's notice of claim requirement applies to Plaintiffs'

NYHRL claims, as Plaintiffs seek enforcement of their private interests and recovery of

money damages.  *Newman*, 2008 WL 974699, at * 3; *Drees*, 2007 WL1875623, at *14;

*Atkins*, 251 F.Supp.2d at 1235; *Biggers,* 127 F.Supp.2d at 455.  Relevantly, Plaintiffs

seek lost and future wages, bonuses, employment benefits, "damages to their

reputations," and consequential damages "resulting from Defendant's discrimination."

Complaint at ¶ 25.  Although Plaintiffs also seek a judgment against Defendant

"declaring the acts and practices of Defendant to be in violation of the United States

and the State of New York" and request a permanent injunction ordering Defendant to

cease and desist from engaging in the illegal and unlawful acts and practices described

herein," *i.e.*, Complaint ¶ 25 (b, and (c, these legal and equitable requests do not qualify

the relief sought by Plaintiffs as in the public interest and while Plaintiffs' action, if

successful on the merits, may positively affect the public interest (as do all actions to

enforce civil rights and anti-discrimination laws), *see Biggers,* 127 F.Supp.2d at 455,

because Plaintiffs seek primarily money damages, Plaintiffs' action is not more

"imbued" with the public interest than with a vindication of Plaintiffs' private interests.

*Finley*, 827 F.Supp. at 220.  Consequently, the court finds Plaintiffs' NYHRL claims are subject to § 3813's notice of claim requirement.  *See Mills,* 451 N.E.2d at 458 (plaintiff's allegations regarding defendant's § 1983 violations referred "only to conduct that [related] to [plaintiff]," and therefore not in the public interest); *compare Union Free Sch. Dist. No. 6 of Towns of Islip & Smithtown*, 320 N.E.2d at 863 (claim asserted by N.Y. Division of Human Rights "on behalf of a class of women plaintiffs alleging that the school board's policy with respect to maternity leave was discriminatory" held to be in the public interest).  Thus, § 3813's requirement of a timely notice to the District, and pleading compliance with this requirement, cannot be avoided by Plaintiffs' instant lawsuit.

Accordingly, assuming Plaintiffs' NYHRL claims are deemed to have accrued either on March 7, 2004, when Defendant notified Plaintiffs of their new teaching assignments, or on March 15 and 23, 2004, when Plaintiffs were respectively subjected to the second classroom observations within a one-year period, because Plaintiffs' notices of claim to the District, in the form of a copies of the Plaintiffs' EEOC Administrative Charges, were sent to the District on June 30, 2004, more than three months after accrual of Plaintiffs' claims based upon any of Defendant's actions directed to Plaintiffs in March 2004, Plaintiffs undisputedly failed to allege they had filed a timely notice of claim with Defendant in accordance with § 3813.  Even if Plaintiffs' claims, particularly Plaintiffs' asserted constructive discharges, are deemed to have accrued in 2006 when Plaintiffs retired, it is too late for Plaintiffs to satisfy § 3813's timely notice of claim requirements as to such claims.  As Plaintiffs rely exclusively on the mailing of Plaintiffs' EEOC Administrative Charges as compliance with the notice of

claim requirements of § 3813, Plaintiffs' Memorandum at 2-3, Plaintiffs do not contend

their NYHRL claims accrued in September 2004, when they commenced to teach fifth

grade classes at the Fletcher School in accordance with Defendant's reassignments of

Plaintiffs nor in 2006, when Plaintiffs decided to retire.

In the instant case, although receipt of an EEOC charge by a school district may

constitute a notice of claim, *Donlon*, 2007 WL108470, *3; *Kushner,* 285 F.Supp.2d at

316, for Plaintiffs' notices of claim to have been timely under § 3813, as Plaintiffs' state

law cause of action based on their teaching assignment changes accrued on March 7,

2004, the date Plaintiffs received notice of their reassignments from D'Angelo, to

comply with § 3813's three-month notice of claim filing requirement, the District should

have received a copy of Plaintiffs' EEOC Administrative Charges as notice of Plaintiffs'

NYHRL claims for § 3813's purposes, from the EEOC not later than June 7, 2004, or

three months from the date on which Plaintiffs' causes of action accrued.  Here, it is

undisputed the EEOC forwarded notice of Plaintiffs' claim to the District on June 30,

2004, well beyond the permissible three-month period, an element of Plaintiffs' NYHRL

claim, required by § 3813.  Regardless of whether Plaintiffs' NYHRL cause of action

accrued on March 7, 2004, the date on which Plaintiffs were notified of their

reassignments, or March 15, 2004, or March 23, 2004, the dates on which Field and

Mancuso were respectively observed in their classrooms by D'Angelo, the date the

EEOC forwarded copies of Plaintiffs' EEOC Administrative Charges to the District, June

30, 2004, is nevertheless beyond the three-month commencing on such dates and

which expired on June 7, June 15, or June 23, 2004, respectively.  Thus, Plaintiffs did

not, and could not, allege in the Complaint timely compliance with § 3813 as to their

NYHRL claims.

Despite failing to timely file notices of claim, in compliance with New York law, Plaintiffs could have nevertheless timely applied to a court within one-year for leave to file late notices of claim required by § 3813, but Plaintiffs did not, and the time period, one-year from the date of claim accrual, within which they may have done so, under New York law, has since expired.  *See Amorosi*, 880 N.E.2d at 8 ("[A]ccording to [§ 3813[2-b]], a late notice of claim [in an action against a school district] must be filed <u>no later</u> <u>than</u> <u>one</u> <u>year</u> after a cause of action accrues.") (bracketed material and underlining added).  *Donlon,* 2007 WL 108470, at *5 (court has discretion to extend notice of claim period upon application within one-year from accrual of plaintiff's claim); *Ximines v. George Wingate High School*, 2006 WL 2086483, at *10 (E.D.N.Y July 25, 2006) (quoting § 3813[2-a]) ("[u]pon application, the court, in its discretion, may extend the time to serve a notice of claim").  However, the court cannot grant a plaintiff's request for leave to file late notice of claim made beyond "the expiration of the statute of limitations for the claim." [20, 21, 22]  *Newman,* 2008 WL 974699, at *6.  Thus, in this case, even if Plaintiffs failed to comply with § 3813's three-month notice of claim filing

---

[20] "Tort claims against a school district are excepted from the § 3813's notice requirements, and, instead, must comply with the notice requirements found in the New York General Municipal Law § 50 (*see* Education Law § 3813(2)." *Newman*, 2008 WL 974699, at *6 ("Pursuant to § 50-i(1)(c), an action against a school district sounding in tort must be commenced within one year and ninety days after the happening of the event upon which the claim is based, not within the one year limit mandated by § 3813(1)") (internal quotation omitted).  *See also Amorosi*, 880 N.E.2d at 8.

[21] "[T]he filing of the notice of claim [does] not toll the statute of limitations . . . ." *Koehnlein v. Jackson,* 784 N.Y.S.2d 431, 431 (4th Dep't. 2004) (citing *Matter of Barner v. Jeffersonville-Youngsville Cent. Sch. Dist.,* 502 N.Y.S.2d 285, 288 n. 1 (3rd Dep't. 1986); and *Matter of Miller v. McGough*, 467 N.Y.S.2d 250, 250 (2d Dep't. 1983)).

[22] The limitations period for commencing age discrimination action under the NYHRL against a school district is one year from the date the cause of action accrued.  *Amorosi*, 880 N.E.2d at 5.

requirement, applicable to Plaintiffs' NYHRL claims, any such request for extension could not exceed 365 days from the accrual of Plaintiffs' state claims based on either the dates of the Plaintiffs' March 2004 teaching reassignments or the classroom observations, and such period, *i.e.*, as of March 2005, within which to grant an extension of time, has now passed.

Even if, as Plaintiffs now assert, Plaintiffs' Memorandum at 7, their 2006 retirements constitute an actionable adverse employment action under the NYHRL based on a constructive discharge, as Plaintiffs now posit, and even further assuming Defendant created a hostile work environment after March 2004 by continuing to require Plaintiffs to teach fifth grade causing Plaintiffs' to retire in June 2006 as Plaintiffs now maintain, the time within which Plaintiffs were required to comply with § 3813 or to have applied for leave to file a late notice of claim pursuant to § 3813 in order to preserve their NYHRL claims based on their 2006 retirements also expired in June 2007, shortly after Plaintiffs filed this action on April 12, 2007.

Plaintiffs nevertheless attempt to avoid dismissal of their NYHRL claims based on their failure to comply with the applicable New York's one-year statute of limitations. In particular, in their letter to the court, Plaintiffs' Letter, Plaintiffs contend that even if the one-year statute of limitations is applicable to Plaintiffs' NYHRL claims, the running of this one-year period was tolled while their EEOC Administrative Charges were pending before the EEOC.  However, Plaintiffs failed to cite any authority for this proposition, and Defendant does not address it.  As noted, Facts, *supra*, at 6, Plaintiffs' EEOC Administrative Charges were filed June 21, 2004 and the EEOC issued Plaintiffs' Right to Sue Letters on January 11, 2007, officially concluding EEOC's consideration of

Plaintiffs' charges.  Plaintiffs' Exh. A.  Thus, if this period, June 21, 2004 through

January 11, 2007, were tolled as Plaintiffs contend, Plaintiffs' NYHRL claims in this

case, filed April 12, 2007, based on Defendant's March 2004 actions, would be timely

as only eight months had elapsed; if not tolled, then Plaintiffs' NYHRL claims were filed

beyond the applicable one-year period as provided under N.Y. Educ. Law § 3813[2-b],

assuming accrual of Plaintiffs' claims occurred in March 2004.[23]  Notwithstanding, even

if timely for New York's one-year statute of limitations purposes, Plaintiffs' NYHRL

claims, including any claim for constructive discharge accruing only in 2006, are

nevertheless barred under applicable state law as a result of Plaintiffs' failure to comply

with § 3813's notice of claim prerequisites to suit as to such claims.

      "The Second Circuit has not considered whether the filing of an administrative

charge with the EEOC or the DHR [N.Y. Division of Human Rights] tolls the statute of

limitations as to <u>all</u> claims arising out of such charge until the relevant termination

proceedings are pending," and "district courts within the Second Circuit are split on the

question." [24]  *Gardner v. St. Bonaventure Univ.*, 171 F.Supp.2d 118, 128-29 (W.D.N.Y.

2001) (intentional infliction of emotional distress limitations period not tolled pending

EEOC's determination of employment discrimination claim) (bracketed material and

underlining added); *Hargett v. Metro. Transit Auth.*, 2008 WL 1700143, at *4-5

(S.D.N.Y. 2008) (no definitive ruling by Second Circuit regarding whether filing

---

[23] If Plaintiffs' constructive discharge claims based on Plaintiffs' 2006 retirements were considered to have been pleaded in the Complaint, and were also found to be viable under the NYHRL, such claims are not time-barred for NYHRL purposes as they were filed within one-year of Plaintiffs' retirements in June 2006, *i.e.*, on April 12, 2007.

[24] Charges filed with the EEOC are deemed "constructively to be cross-filed with the NYDHR . . .." *Sundaram v. Brookhaven Nat. Laboratories,* 424 F.Supp.2d 545, 565 (E.D.N.Y. 2006).

administrative charges with EEOC tolls statute of limitations "as to <u>all</u> claims arising out

of the same set of facts") (underlining added).  However, "[t]he weight of authority . . . is

against tolling <u>state</u> <u>claims</u> during the pendency of the EEOC claim." *Gardner,* 171

F.Supp.2d at 129-30 (underlining added).  *See Collier v. Boymelgreen Developers*,

2008 WL 835706, at \*9 (E.D.N.Y. Mar. 28, 2008) (same); *Hargett,* 2008 WL 4114256 at

\* 4 (same).[25]

Nevertheless, assuming, *arguendo*, that Plaintiffs' filing, on June 21, 2004, of

administrative charges with the EEOC and the subsequent investigation of Plaintiffs'

charges and conciliation efforts by the EEOC tolled the running of the one-year

limitations period for commencing an action under the NYHRL, *see EEOC v. New York*

*City Health and Hosps. Corp.,* 1994 WL 68420, at \*5 (S.D.N.Y. Mar. 2, 1994) (EEOC

conciliation efforts toll limitations period), Plaintiffs' one-year period within which to

apply for leave to file late notice of claim under § 3813 has nevertheless expired.

Discussion, *supra,* at 53-54.  If the one-year statute of limitations was first tolled, as

Plaintiffs contend, on June 21, 2004 the date which Plaintiffs filed charges with the

EEOC, through January 14, 2007, the date Plaintiffs are presumed to have received

their Right to Sue Letters from the EEOC, *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d

522, 525 (2d Cir. 1996) ("A presumption exists that an EEOC notice is received three

days after its mailing."); *Allen v. Darbey,* 2006 WL 2504446, at \* 5 (W.D.N.Y. Aug. 28,

2006) (recognizing presumption); *Slootskin v. John Brown Eng'g and Constr. Inc.,* 2006

WL 516748, at \*3 (D. Conn. Mar. 1, 2006) (Second Circuit held ADEA statute of

---

[25] As the three-month notice of claim period had expired prior to filing Plaintiffs' EEOC
Administrative Charges, there was no period under § 3813 that could then be tolled by the EEOC filing.

limitations runs from "plaintiff's receipt of a "right-to-sue" letter) (citing *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 887 (2d Cir. 1995)), and the latest date which the New York one-year limitations could, under these facts, resume running, then the one-year statute of limitations ran for 106 days during 2004, before it was tolled (24 days in March 2004, 30 days in April 2004, 31 days in May 2004 and 21 days in June 2004), and for an additional three months, or 88 days in 2007, after Plaintiffs received their Right-to-Sue Letters when the tolling period ended (assuming Plaintiffs received these letters on or about January 14, 2007) resulting in 194 days having run before the instant action was filed.  From April 12, 2007, the date this action was commenced, Plaintiffs therefore had 171 days, or until September 30, 2007, to apply for leave to file late notice of claim but, based on the record, did not, and the court is therefore prohibited, under New York substantive law, from now granting such extension. *Newman,* 2008 WL 974699, at *6-7 (statutory limitation on court's power to extend time to serve late notice of claim "divests the court of authority to grant an extension beyond the expiration of the statute of limitations for the claim."); *Donlon*, 2007 WL 108470 at *5 (expiration of one-year NYHRL statute of limitations divests court of authority to grant relief from § 3813's three-month notice of claim requirements); *Ximines*, 2006 WL 208643, at * 10 (plaintiff's motion to extend time in which to file late notice of claim denied because "[n]o application for an extension of time was made . . . until the filing of response papers . . . more than one year after events took place that gave rise to plaintiff's cause of action").

Plaintiffs' claims for constructive discharges under the NYHRL, ostensibly accruing in 2006, are similarly time-barred based on the same analysis, *i.e.*, these

claims accrued not later than June 2006 and more than one-year has passed since that date disallowing any potential relief from § 3813's notice of claim prerequisites to suit applicable to the accrual of Plaintiffs' constructive discharge claims under the NYHRL at the present time.  The same analysis applies to Plaintiffs' hostile work environment claims as such claims could not have accrued later than June 30, 2006, when Plaintiffs retired, and the one-year period of limitations for such claims under the NYHRL also expired, even if tolled during the pendency of the EEOC's investigation, on September 30, 2007.  Thus, even under Plaintiffs' tolling theory, unsupported by caselaw,[26] Plaintiffs' NYHRL claims are therefore barred based on Plaintiffs' failure to comply with § 3813's notice of claim filing prerequisites as well as being time-barred under § 3813[2-b], and Defendant's motion based on Rule 12(c) directed to such claims should be GRANTED on these grounds.

## 2.    Notice to Governing Body

Defendant alternatively argues that, in addition to being untimely under § 3813, Plaintiffs' NYHRL claims fail to allege compliance with § 3813's delivery and presentment requirements, and are thus subject to Defendant's request for judgment pursuant to Rule 12(c).  Defendant's Reply Memorandum at 2.  Specifically, Defendant

---

[26]  In *Amorosi*, the court declined to find any basis not to apply the requirements of N.Y. Educ. Law § 3813[2-b] to a NYHRL claim against a school district, 880 N.E.2d at 9-10, and as there is no requirement that a complainant exhaust administrative remedies before filing an action under N.Y. Exec. Law 296, *Reeve*, 2008 WL 905908, at *3, it is not apparent why New York law recognizes the tolling principle which Plaintiffs posit based on filing administrative charges with the EEOC.  Even compliance with § 3813's notice of claim requirements does not toll the applicable state statute of limitations.  *See Matter of Barner*, 502 N.Y.S.2d at 288 n. 1 (citing *Matter of Miller*, 467 N.Y.S.2d at 250).  Declining to find that filing an administrative charge with the EEOC tolls the one-year period of limitations applicable to Plaintiffs' NYHRL claims is also "consistent with the general principle that statute of limitations schemes are exclusively the prerogative of the legislative and, absent a clear legislative declaration that any tolling is permissible, the courts should be reluctant to imply one."  *Gardner*, 171 F.Supp.2d at 131 (citing cases).

argues that Plaintiffs did not allege they presented their notice of claim, *i.e.*, a copy of Plaintiffs' EEOC Administrative Charges, to the District's "governing body" as required by Section 3813, Defendant's Reply Memorandum at 2, or allege, as also required by § 3813, that Plaintiffs served the required written notice of their claims within three-months of accrual of their claims in March 2004, and that Defendants refused to pay the claim within thirty days after the timely notice of claim was filed. *Id.* Plaintiffs do not respond to these contentions.

Here, Plaintiffs failed to allege, in their Complaint, or argue in opposition to Defendant's motion, that their notices of claim to the District were submitted to the "appropriate governing body," within three months of the accrual of Plaintiffs' claims, as required by § 3813. *See Grennan,* 2007 WL 952067 *17 (citing cases). Inasmuch as Plaintiffs have failed to plead or submit evidence demonstrating compliance with § 3813, or even the existence of a material issue of fact regarding such question, and because it is undisputed that Plaintiffs' EEOC Administrative Charges were forwarded to the District more than 90 days after Plaintiffs' NYHRL claims accrued in March 2004, regardless of which official received Plaintiffs' charges on behalf of the District, the court need not consider Defendant's additional contention that the allegations contained in Plaintiffs' EEOC Administrative Charges were insufficiently descriptive of Defendant's discriminatory conduct to constitute a notice of claim in compliance with § 3813. Defendant's Reply Memorandum at 3. Additionally, even if Plaintiffs actually suffered from a hostile work environment after March 2004, specifically, by being required to teach fifth grade, instead of first and second grade, classes and were subjected to unwarranted administrative scrutiny, leading to their constructive discharges as an

actionable adverse employment actions when Plaintiffs announced and subsequently

took their retirements in 2006, such claims are now time-barred as beyond the

applicable one-year period of limitations, applicable to Plaintiffs' NYHRL claims,

irrespective of Plaintiffs' failure to comply with § 3813 as to the asserted hostile work

environment (even assuming such hostile working conditions were actually suffered by

Plaintiffs) and their consequent constructive discharges.

Section 3813 requires Plaintiffs to have delivered the notice of claim to the

"appropriate governing body."  N.Y. Educ. Law § 3813 (McKinney 2001).  New York

courts are divided regarding how this requirement may be met.  *Compare, Ricketson v.*

*Cambridge Cent. Sch. Dist.*, 611 N.Y.S.2d 49, 49 (3rd Dep't. 1994) (neither the school

principal nor the school district's superintendent "constitute the District's governing

body" under § 3813); *Spoleta Const. and Dev. Corp. v. Bd. of Educ. of the Byron-*

*Bergen Cent. Sch. Dist.*, 634 N.Y.S.2d 300, 300-01 (4th Dep't. 1995) ("plaintiff's delivery

of the letter to the Superintendent of Schools does not constitute service upon the

Board"); *In re Jackson v. Board of Educ.*, *Colton-Pierrepont Cent. Sch. Dist.*, 598

N.Y.S.2d 842, 842 (3rd Dep't. 1993) (plaintiff did not comply with Section 3813's notice

of claim requirement by serving the superintendent, who is "not a member of the

governing body or the clerk of the governing body of" the school district) *with Mennella*

*v. Uniondale Union Free Sch. Dist.*, 732 N.Y.S.2d 40 (2nd Dep't. 2001) ("A petition to the

Commissioner of Education can constitute the functional equivalent of a notice of

claim"); *see also Bucalo v. E. Hampton Union Free Sch. Dist.*, 351 F.Supp.2d 33

(E.D.N.Y. 2005) (letter notifying superintendent of plaintiff's discrimination claims found

to constitute valid notice of claim).  However, as this court has found a timely notice of

charge from the EEOC to a school district's personnel director will constitute substantial

compliance with § 3813's requirement, *see Donlon*, 2007 WL108470 *3 (citing New

York and federal caselaw), Defendant's contention is without merit.   Nevertheless, as

discussed, Discussion, *supra*, at 58-62, Plaintiffs' NYHRL claims are time-barred as a

matter of state law, and for failure to comply with § 3813, Discussion, *supra*, at 47-58,

and the court therefore need not further address Defendant's contention that Plaintiffs

failed to properly serve the District with a timely notice of claims. Accordingly, if the

Chief District Judge retains, as recommended, supplemental jurisdiction over Plaintiffs'

pendent NYHRL state claims, Defendant's motion pursuant to Rule 12(c) as directed to

Plaintiffs' NYHRL claims should be GRANTED. [27]

### 3.    Plaintiffs' Failure to Allege Adverse Employment Actions

As discussed, Discussion, *supra*, at 45, the standards for a viable ADEA claim

are the same for an age discrimination claim under the NYHRL.  *See Wanamaker*, 108

F.3d at 467.  Further, as also discussed, Discussion, *supra*, at 20-25, based on

applicable federal law, Plaintiffs have failed to allege or establish evidence of adverse

employment action as a required element for their ADEA claims.   Accordingly, Plaintiffs

have also therefore failed to allege any adverse employment actions as a required

---

[27]   Had Plaintiffs cross-moved for leave to file an amended complaint based on a late notice of claim, their request would have had to be denied as futile under Fed.R.Civ.P. 15(a), because a late notice of claim may not be filed beyond the one-year statute of limitations applicable to Plaintiffs' NYHRL claims based on the allegations submitted to the EEOC which, in this instance, expired in March 2005, well-prior to the commencement of this action in April 2007 and the filing of Defendant's motion on October1, 2007. *Donlon,* 2007 WL 108470, at * 5 (restriction that extension to serve late notice of claim not be extended beyond the applicable limitations period "divests the court of authority to grant an extension after the statute of limitations for the claim expires."); *Ximines*, 2006 WL 2066483, at * 10. Also, as discussed, Discussion, *supra*, at 58-59, any claims Plaintiffs may have accrued in 2006 arising from a constructive discharge, not pleaded in the Complaint, are similarly time-barred under New York law and, as potential amended claims in this action, also became futile after June 2007.

element of their NYHRL claims.  Therefore, Defendant's motion directed to such claims should be GRANTED.

## CONCLUSION

Based on the foregoing, Defendant's motion (Doc. No. 19) directed to Plaintiffs' ADEA claims and NYHRL claims should be GRANTED.  Alternatively, Defendant's motion directed to Plaintiffs' ADEA claims should be GRANTED, and Plaintiffs' NYHRL claims should be DISMISSED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 26, 2008
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Ordered.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 26, 2008
                 Buffalo, New York